**Tamara HARPER, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY, Appellee.**

**No. 1999–SC–0935–MR.**

Supreme Court of Kentucky.

April 26, 2001.

John Palombi, Misty Jenine Dugger, Assistant Public Advocates, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General of Kentucky, Michael G. Wilson, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

JOHNSTONE, Justice.

Appellant, Tamara Harper, was convicted of complicity to murder and complicity

to first-degree robbery. She was sentenced to twenty years' imprisonment on the murder charge and ten years' imprisonment on the robbery charge, with the sentences ordered to be served concurrently. She appeals to this Court as a matter of right. We reverse and remand.

Scott Phillips rode with a friend, Mike Randolph, to a river boat casino in Illinois on or about August 31, 1996. They arrived at about 2:30 p.m. Phillips had better luck at cards than Randolph who quit gambling and drove home around 1:15 a.m. the next morning. Phillips stayed on the boat. Sometime after Randolph left, Phillips met Harper on the boat and made the mistake of asking her for a ride home.

Harper had driven her car to the boat taking with her three other persons: Enos Burden, Kevin Platt, and George Vanover. Harper asked one or more of her companions if it was okay for her to give Phillips a ride. The five of them—Harper, Burden, Platt, Vanover, and Phillips—left the casino together with Harper driving. During the drive from the casino, Burden and Phillips got into an argument. Harper stopped the car and Burden and Phillips got out of the vehicle.

During the course of the argument, Burden pulled out a pistol he had been given earlier by Vanover. Phillips dared Burden to shoot him. Vanover urged Burden to shoot Phillips. Burden then shot and killed Phillips. Thereafter, Vanover searched Phillips' clothes and removed his wallet. Upon returning to the car, he distributed cash from the wallet to everyone in the car, including Harper who had remained in the driver's seat and Platt who had been passed out drunk most of the time.

Harper, Burden, Platt, and Vanover were all charged with murder and robbery and/or acting as an accomplice to these crimes. Platt pled guilty to first-degree robbery and hindering prosecution and received a sentence of ten years' imprisonment. Vanover pled guilty to murder and first-degree robbery and received a life sentence. Harper claimed innocence and only she was tried in connection with Phillips' murder. At trial, she presented an alibi defense. Both Platt and Vanover testified against Harper pursuant to their plea agreements. Burden, who had a long history of mental illness, was found incompetent to stand trial and did not testify at Harper's trial.

## I. FAILURE TO INSTRUCT ON ALL ELEMENTS OF COMPLICITY

■ Harper argues that the trial court erred by failing to include a necessary element in the complicity to murder and first-degree robbery instructions. Specifically, Harper argues that the trial court failed to include the element of intent in its instructions. We agree and therefore reverse.

The trial court and counsel went over the instructions at length in chambers. During these discussions, both the trial court and the prosecutor emphasized that the theory of complicity liability at issue in the instructions was premised on subsection (1) of KRS 502.020, which provides in pertinent part:

A person is guilty of an offense committed by another person when, *with the intention of promoting or facilitating the commission of the offense,* he:

(a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or

(b) Aids, counsels, or attempts to aid such person in planning or committing the offense . . . .

(Emphasis added).

■ The language of KRS 502.020(1) and the accompanying commentary make

clear that intent is an essential element to a conviction under subsection (1) of the statute. "To be guilty under subsection (1) for a crime committed by another, a defendant must have *specifically intended* to promote or facilitate the commission of *that* offense. This means that the statute is not applicable to a person acting with a culpable mental state other than 'intentionally.'" KRS 502.020, Official Commentary (emphasis added). Thus, the "[i]ntention to promote or facilitate the *charged* offense is what must be proved for conviction under KRS 502.020(1)...." Robert G. Lawson and William H. Fortune, *Kentucky Criminal Law* § 3–3(b)(3) (Lexis 1998) (emphasis in original). Therefore, we hold the trial court erred by failing to include the element of intent in the complicity instructions. *See Carpenter v. Commonwealth*, Ky., 771 S.W.2d 822, 825 (1989); *Watkins v. Commonwealth*, Ky., 298 S.W.2d 306 (1957), which both hold that, where intent is an essential element of the offense, failure to instruct on it is reversible error.

The trial court instructed on the complicity to murder charge in pertinent part:

You will find the Defendant ... Guilty of Complicity to Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A.... Enos Burden killed Richard Scott Phillips by shooting him with a gun;

B. That in so doing, Enos Burden caused the death of Richard Scott Phillips intentionally;

AND

C. That prior to the shooting of Richard Scott Phillips the Defendant ... had solicited, commanded, or engaged in a conspiracy with Enos Burden to commit the offense or aided, coun-

seled, or attempted to aid Enos Burden in planning or committing the offense.

Likewise, the trial court instructed on the complicity to first-degree robbery charge in pertinent part:

You will find the Defendant ... Guilty of Complicity to Robbery under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A.... George Vanover stole money from Richard Scott Phillips;

B. That in the course of the theft and with intent to accomplish the theft, Enos Burden used physical force upon Richard Scott Phillips by shooting him with a gun;

AND

C. That the Defendant ... had solicited, commanded, or engaged in a conspiracy with Enos Burden to use physical force against Richard Scott Phillips in order to take money from him or aided, counseled, or attempted to aid George Vanover in planning or committing the offense of Robbery of Richard Scott Phillips.

Obviously, the trial court failed to instruct the jury on the essential element of whether Harper, through her actions, had the intention that Phillips either be murdered or robbed. *Wilson v. Commonwealth*, Ky., 601 S.W.2d 280, 286 (1980), sets forth an adequate instruction concerning a defendant's mental state in a complicity to murder instruction. In *Wilson*, the trial court instructed the jury on complicity to murder in pertinent part:

The jury will find the defendant, Shelia Wilson guilty if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

....

(c) That the defendant, Shelia Wilson, aided and assisted said Goff or 'Radford'

by transporting him to and from the scene of said shooting;

and

(d) That in so aiding and assisting Goff or 'Radford' *it was Shelia Wilson's intention to cause the death of Michael Lewis Wilson.*

601 S.W.2d at 285 (emphasis added). The *Wilson* Court held that this instruction was sufficient as to the appellant's mental state. *Id.* at 286. A similar instruction concerning Harper's mental state would have been sufficient in the case at bar. The failure to instruct at all on her mental state was reversible error.

We also note that Justice Cooper's specimen instruction includes all the necessary elements of an instruction on complicity charge pursuant to KRS 502.020(1). That instruction, which uses complicity to murder as an example, provides:

> You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about _____ (date) and before the finding of the Indictment herein, _____ (D–2) killed _____ (victim) by _____ (method);
>
> B. That in so doing, _____ (D–2) caused the death of _____ (victim) intentionally;
>
> C. That prior to that date, the Defendant had [solicited _____ (D–2) to kill _____ (victim) by _____ (method– 2) (*e.g.*, paying him a sum of money)] [entered into an agreement with _____ (D–2) that _____ (D–2) would kill _____ (victim) ];

AND

> D. That in [soliciting] [entering into that agreement with] _____ (D–2), it was the Defendant's intention that _____ (D–2) would kill _____ (victim).

1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 10.06 (Anderson 1999).

## II. *INSUFFICIENT EVIDENCE*

In addition to arguing that the accomplice instructions were fatally flawed for failure to include the element of intent, she also argues that her conviction should be reversed because the Commonwealth failed to introduce any evidence that she intended, by her actions, that Burden intentionally kill Phillips. We disagree.

■ In a prosecution pursuant to KRS 502.020(1), in addition to having to prove that it was the defendant's intention to promote or facilitate the charged offense, the Commonwealth has the burden of proving the commission of the charged offense by another person and of proving that the defendant participated in that offense. *See* Lawson and Fortune, *supra,* at § 3–3(d)(2). It is a well-settled principle that a person is presumed to intend the logical and probable consequences of his actions and, thus, "a person's state of mind may be inferred from actions preceding and following the charged offense." *Parker v. Commonwealth,* Ky., 952 S.W.2d 209, 212 (1997), *cert. denied,* 522 U.S. 1122, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998). The Commonwealth's evidence that showed Harper's participation in the murder presented sufficient evidence from which the jury could infer that she had the requisite intent.

■ The Commonwealth introduced evidence that: (1) Harper drove Platt, Vanover, and Burden to the river boat in her

car; (2) Harper knew that Vanover had two pistols with him and that Vanover had given the pistols to Burden to examine; (3) Harper made first contact with Phillips; (4) Harper agreed to give Phillips a ride; (5) Harper was present when Phillips was shot and killed; (6) Harper received part of the money taken from Phillips' wallet; (7) Harper drove Platt, Vanover, and Burden away from the crime scene; and (8) Vanover left the murder weapon and another pistol in Harper's car, and he never retrieved either weapon. From this evidence, the jury could have inferred that Harper intended to promote or facilitate Burden's intentional killing of Phillips.

## III. *FAILURE TO INCLUDE INSTRUCTIONS ON COMPLICITY TO LESSER–INCLUDED HOMICIDE OFFENSES*

Next, Harper argues that the trial court erred in failing to instruct on complicity to first- and second-degree manslaughter. Harper tendered instructions on these offenses, but the trial court refused to submit them to the jury because the evidence showed that Burden's actions in killing Phillips only could be intentional. While we agree with the trial court that there was no evidence to support a finding that Burden's shooting of Phillips was other than intentional, we disagree with the trial court's conclusion that this settled the issue.

■ First, we note that complicity liability under subsection (1) of KRS 502.020 requires both proof that another committed the charged offense and proof that the defendant intended for another to commit that offense. In other words, there is an identity between the offense committed by another and the offense that the defendant/accomplice intended that the ᶜ other person commit. Further, as already shown, complicity liability under subsec-

tion (1) of KRS 502.020 is an intentional crime. Thus, it is an impossibility for Harper, based on her mental state, to be guilty under subsection (1) of complicity to second-degree manslaughter, which requires a wanton state of mind. However, from the evidence presented, the jury could have believed that Burden shot Phillips with the intent to cause Phillips serious physical injury which thereby killed Phillips *and* that Harper, by her actions, intended that Burden shoot Phillips with the intent of causing Phillips serious physical injury. Thus, the trial court should have instructed the jury on first-degree manslaughter.

Harper also argues that she was entitled to an instruction on second-degree manslaughter pursuant to subsection (2) of KRS 502.020, which provides in pertinent part:

> When causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense when he:
>
> > (a) Solicits or engages in a conspiracy with another person to engage in the conduct causing such result; or
> >
> > (b) Aids, counsels, or attempts to aid such person in planning, or engaging in the conduct causing such result ...

While not preserved, we address the merits of this issue because it is likely to recur at retrial.

■ We recently explained the difference between subsection (1) accomplice liability and subsection (2) accomplice liability in *Tharp v. Commonwealth,* Ky., 40 S.W.3d 356 (2000):

> The primary distinction between these two statutory theories of accomplice liability is that a person can be guilty of "complicity to the act" under KRS

502.020(1) only if he/she possesses the *intent* that the principle actor commit the criminal act. However, a person can be guilty of "complicity to the result" under KRS 502.020(2) without the intent that the principal's act caused the criminal result, but with a state of mind which equates with "the kind of culpability with respect to the result that is sufficient for the commission of the offense," whether intent, recklessness, wantonness, or aggravated wantonness. *Id.* at 360, quoting the Official Commentary to KRS 502.020 (emphasis in original). Thus, an instruction for second-degree manslaughter is not automatically precluded under subsection (2) as it is under subsection (1). Further, subsection (2) complicity liability is not limited to nonintentional mental states.

■ It is important to note that under subsection (2) of KRS 502.020, an accomplice's liability and the principal actor's liability can be at different levels, *e.g.*, the accomplice could be found guilty of complicity to reckless homicide even though the homicide was committed wantonly or intentionally by the principal actor. This is different than complicity liability under subsection (1), which, by definition, provides that the accomplice's liability and the principal's liability occupy the same level and status. *See Wilson*, 601 S.W.2d at 286. Moreover, under subsection (2), proof of the principal actor's mental state is not even necessary. As to the principal actor, proof that another caused the prohibited result is all that is required. Under subsection (2), only the defendant/accomplice's mental state is at issue, *i.e.*, the Commonwealth must prove the accomplice's culpability toward the prohibited result.

■ In the case at bar, complicity to second-degree manslaughter for Harper pursuant to KRS 502.020(2), would require proof: (1) that another (presumably Burden) killed Phillips; (2) that Harper actively participated in Burden's actions which resulted in Phillips' death; and (3) that Harper acted wantonly. On the record before us, an instruction on second-degree manslaughter appears to be supported by the evidence. If the evidence is the same or similar at retrial, the trial court should instruct the jury on second-manslaughter (or any other appropriate primary or lesser-included offense supported by the evidence) based on a subsection (2) theory complicity liability.

## IV. FAILURE TO GIVE A CRIMINAL FACILITATION INSTRUCTION

Finally, Harper argues that the trial court erred in failing to give an instruction on criminal facilitation as a lesser-included offense on both the murder and the robbery charge. The trial court found that the evidence adduced at trial did not support giving the instructions. As the evidence at retrial may be different than that at the first trial, *e.g.*, Harper may change her defense, we leave the question of whether facilitation instructions are supported by the evidence as a matter to be determined upon retrial.

## V. OTHER ERRORS

We have carefully reviewed Harper's other allegations of error and conclude that they are without merit and do not deserve discussion.

For the reasons set forth above, the judgment of the Christian Circuit Court is hereby reversed and this case is remanded for a new trial consistent with this Opinion.

LAMBERT, C.J.; GRAVES, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

COOPER, J., concurs by separate opinion.

COOPER, Justice, Concurring.

Scott Phillips was a resident of Franklin, Kentucky, located approximately 100 miles southeast of Metropolis, Illinois. He and his friend, Mike Randolph, intended to spend the evening of August 31—September 1, 1996, gambling at a riverboat casino docked at Metropolis. The two had made hotel reservations for the night in nearby Paducah and checked into their hotel room before proceeding on to Metropolis. As recited in the majority opinion, Randolph left the casino before Phillips and returned to the hotel. Phillips told Randolph he would return to the hotel later, by taxi if necessary. Ultimately, Phillips was offered a ride "home" by Appellant Harper and her three companions, Burden, Vanover and Platt.

Harper and her companions were residents of Owensboro, Kentucky, located approximately 100 miles northeast of Metropolis and 100 miles due north of Franklin. They had driven from Owensboro to Metropolis that day and intended to (and did) return to Owensboro that night. While it would not have been out of their way for Harper and her companions to drive Phillips to his hotel room in Paducah, it would have been 100 miles out of their way to drive him to Franklin. Phillips was killed and robbed on I–24 in Christian County about half way between Paducah and Franklin. A jury could believe from this evidence that Phillips did not intend to return to Franklin that night, but desired to return to his hotel room in Paducah; and that Harper and her companions drove Phillips to Christian County for the express purpose of robbing and/or killing him. Thus, I concur with the majority's conclusion that the evidence sufficed to support Harper's convictions of complicity to murder and robbery.

I also concur with the majority's holding that the complicity instructions, which were premised upon KRS 502.020(1), i.e., "complicity to the act," were erroneous in failing to require the jury to find that Harper intended that Phillips would be robbed and killed. Intent that the crime be committed is an element of complicity under KRS 502.020(1). However, I would not reverse on that issue; for the complicity instructions given by the trial judge were word-for-word identical to the complicity instructions tendered by Appellant. *Commonwealth v. Southwood*, Ky., 623 S.W.2d 897 (1981); *Mason v. Commonwealth*, Ky., 565 S.W.2d 140 (1978). In fact, the trial judge initially prepared correct instructions, but ultimately accepted the Commonwealth's erroneous argument that complicity under KRS 502.020(1) does not require an intent on the part of the accomplice that the crime be committed. Appellant did not argue otherwise and did not object to the instructions as given. RCr 9.54(2).

Nor would I reverse because of the failure to include an instruction on complicity to manslaughter in the first degree. Appellant's counsel conceded during the instruction conference held on July 28, 1999 that an instruction on complicity to first-degree manslaughter was not warranted by the evidence. That concession was not withdrawn during the final instruction conference held on July 29, 1999.

However, Appellant did tender an instruction on complicity to second-degree manslaughter, albeit incorrectly worded, and objected to the trial court's failure to instruct on that offense as a lesser included offense. As pointed out in *Tharp v. Commonwealth*, Ky., 40 S.W.3d 356, 360 (2000), homicide is a "result" offense, thus triggering the provisions of KRS 502.020(2), i.e., "complicity to the result." Harper could be convicted of complicity to second-degree manslaughter if the jury believed she actively participated in the ac-

tions of the principal actors, Burden and Vanover, *without the intent* that those actions would result in Phillips's death, but with an awareness and conscious disregard of a substantial and unjustifiable risk that death would result, if her disregard of that risk constituted a gross deviation from the standard of care that a reasonable person would observe in the circumstance. KRS 507.040(1); KRS 501.020(3). Under KRS 502.020(2), the *mens rea* of the principal actor is immaterial and the accomplice's culpability is determined by his/her own *mens rea*, whether intentional, wanton or reckless. The facts of this case would support instructions under KRS 502.020(2) not only on complicity to intentional murder and complicity to second-degree manslaughter, but also on complicity to wanton murder and complicity to reckless homicide, *e.g.:*

INSTRUCTION NO. ____

### Complicity to Murder

You will find the Defendant guilty of Complicity to Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about September 1, 1996 and before the finding of the indictment herein, Enos Burden and/or George Vanover killed Scott Phillips by shooting him with a pistol;

B. That prior to the killing, the Defendant, Tamara E. Harper, had solicited, counseled, commanded, or engaged in a conspiracy with Burden and/or Vanover to rob or harm Phillips;

AND

C. That in so doing:

(1) The Defendant intended that Phillips would be killed;

OR

(2) The Defendant was wantonly engaging in conduct which created a grave risk of death to Phillips and thereby caused the death of Phillips under circumstances manifesting an extreme indifference to human life.

INSTRUCTION NO. ____

### Complicity to Second–Degree Manslaughter

If you do not find the Defendant guilty under Instruction No. ____, you will find the Defendant guilty of Complicity to Second–Degree Manslaughter under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about September 1, 1996 and before the finding of the indictment herein, Enos Burden and/or George Vanover killed Scott Phillips by shooting him with a pistol;

B. That prior to the killing, the Defendant, Tamara E. Harper, had solicited, counseled, commanded, or engaged in a conspiracy with Burden and/or Vanover to rob or harm Phillips;

AND

C. That in so doing, the Defendant was aware of and consciously disregarded a substantial and unjustifiable risk that Phillips would be killed, and that her disregard of that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation.

INSTRUCTION NO. ____

### Complicity to Reckless Homicide

If you do not find the Defendant guilty under Instruction No. ____ or Instruction No. ____, you will find the Defendant guilty of Complicity to Reckless Homicide under this Instruction if,

and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about September 1, 1996 and before the finding of the indictment herein, Enos Burden and/or George Vanover killed Scott Phillips by shooting him with a pistol;

B. That prior to the killing, the Defendant, Tamara E. Harper, had solicited, counseled, commanded, or engaged in a conspiracy with Burden and/or Vanover to rob or harm Phillips;

AND

C. That in so doing, the Defendant failed to perceive a substantial and unjustifiable risk that Phillips would be killed, and that her failure to perceive that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation.

Under the evidence presented in this case, a jury could also have found Harper guilty of homicide under the modified "felony murder" doctrine described in *Bennett v. Commonwealth,* Ky., 978 S.W.2d 322 (1998), *i.e.,* that she was an accomplice to an armed robbery during which the victim was killed by another participant in the robbery. See 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 3.30 (4th ed. Anderson 1993) for sample specimen instructions embodying this theory of homicide liability. Neither party requested instructions on that theory of the case.