NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0052n.06
Filed: January 15, 2008

No. 06-5674

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| TYRONE P. MARSHALL | ) |
| | ) |
| Petitioner-Appellant, | ) |
| v. | ) |
| | ) ON APPEAL FROM THE |
| JAMES MORGAN. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE WESTERN |
| Respondent -Appellee . | ) DISTRICT OF KENTUCKY |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

BEFORE:    KEITH and ROGERS, Circuit Judges; and ALDRICH, District Judge[*]

**DAMON J. KEITH, Circuit Judge.** Petitioner, Tyrone P. Marshall, appeals from the April 17, 2006 decision of the United States District Court for the Western District of Kentucky denying his petition for a writ of habeas corpus. For the reasons stated below, we **AFFIRM**.

**I. BACKGROUND**

Petitioner Marshall was convicted in the Oldham County Circuit Court (Kentucky) for murder, criminal attempt to commit murder, and first-degree burglary. He was sentenced to life in prison without the possibility of parole for twenty-five years for the murder conviction. He was also

_____

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

1

sentenced to twenty years each on the attempted murder and first-degree burglary convictions, each to run concurrently with the life sentence.

On April 5, 1996, three men – the Petitioner, Mark Downey, and Richard Strode – broke into the home of Joseph and Sharon Fink in Trimble County, Kentucky. Mr. Downey and Petitioner entered through the front door and knocked over Mr. Fink, who was sitting in a chair watching television. Mr. Strode entered the residence through the back door after cutting the phone line. When Mrs. Fink emerged from her bedroom, she was taken to the kitchen, where her arms were bound behind her back with duct tape. Downey and one of the other men then led Mr. Fink around the house, forcing him to show them where he kept his jewelry and cash.

After finding the cash and jewelry, the men took Mr. Fink into the kitchen and bound his hands in front of him with duct tape. Downey placed a pillow over Mr. Fink's head and shot him when Fink attempted to get up. He then shot Mrs. Fink. Mr. Fink survived; Mrs. Fink did not.

After the burglary and the shootings, the three men stole the Finks's van and drove to Richard Strode's house to divide the money. They then drove to Cincinnati, Ohio. The three men and Mark Downey's wife, Sharon, who had driven them to the Finks's home, were all indicted by a Trimble County grand jury on April 19, 1996, for murder, attempted murder, and first-degree burglary. They were all tried separately. Petitioner's case was transferred to the Oldham Circuit Court after he requested a change of venue.

Mark Downey pled guilty to the charged offenses on January 21, 1998, and was sentenced to life in prison without the possibility of parole for twenty-five years on the murder charge and twenty years each on the burglary and attempted murder charges, each to run concurrently with the life sentence. Petitioner waived his right to a jury trial. He was found guilty of intentional murder,

2

attempted murder, and first-degree burglary and was given the same sentences as Mark Downey.

The Supreme Court of Kentucky affirmed the judgment on November 21, 2001, *Marshall v. Commonwealth,* 60 S.W. 3d 513 (Ky. 2001), and the United States Supreme Court denied certiorari on April 22, 2002. *Marshall v. Kentucky*, 535 U.S. 1024 (2002). Petitioner then filed a motion for post-conviction relief pursuant to Kentucky Criminal Rule (RCr) 11.42, which was denied on January 3, 2003. The Kentucky Court of Appeals affirmed the decision of the lower court on October 13, 2004.

Petitioner commenced this habeas action in the United States District Court for the Western District of Kentucky on April 12, 2005. Because Petitioner did not fire the shots that resulted in the murder of the victim, he disputes whether the facts in the record below are sufficient to warrant a murder conviction. He also contends that he was not adequately questioned by the court regarding his decision to waive his right to a jury trial in writing, that the state trial court admitted testimony that violated his Sixth Amendment rights, and that his counsel was ineffective.

Respondent moved to dismiss the petition, and alternatively, to enter summary judgment in its favor. Magistrate Judge Whalin issued a "Findings of Fact, Conclusions of Law, and Recommendation" report, and on April 17, 2006, Judge John G. Heyburn adopted the report and dismissed the habeas petition. Petitioner then appealed to this Court.

## II. DISCUSSION

This Court evaluates petitions for writ of habeas corpus to determine whether the state court decision was either (1) contrary to clearly established federal law as determined by the Supreme Court of the United States or (2) involved an unreasonable application of clearly established federal

law as determined by the Supreme Court of the United States. *Wright v. Van Patten*, 2008 U.S. LEXIS 200, at *4 (citing 28 U.S.C. § 2254(d)(1) (2006)).

A district court's legal conclusions are reviewed *de novo*, and findings of fact are reviewed for clear error, even when based on the state record. *DeLisle v. Rivers*, 161 F.3d 370, 380 (6th Cir. 1998) (en banc) (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997)).

**A. Sufficiency of evidence supporting Petitioner's conviction for intentional murder.**

Petitioner contends that because he did not fire the gun at the murder scene and because he did not know Downey would shoot Mr. and Mrs. Fink, he should not have been found guilty of intentional murder.

This Court must determine whether the state court's resolution of this issue "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C § 2254 (d)(1) & (2) (2006).

The trial court applied KRS 502.020, which provides that a defendant can be held liable for actions of another under two circumstances: (1) a defendant is criminally liable for "complicity to the result" when he acts with the same degree of culpability with respect to the result that would be sufficient for the commission of the offense, *Tharp v. Commonwealth*, 40 S.W.3d 356, 362 (Ky. 2000), *cert denied*, 534 U.S. 928 (2001); and (2) a defendant can be found criminally liable for "complicity to the act" if he intended that the victim be killed. *Harper v. Commonwealth*, 43 S.W. 3d 261, 266 (Ky. 2001). The fact-finder may infer intent from the actions of the defendant or the

4

circumstances surrounding those actions, *id.* at 265, or from the defendant's knowledge, *Davis v. Commonwealth*, 967 S.W.2d 574, 581 (Ky. 1988).

The record in this case indicates that (1) Marshall agreed to participate in the burglary, (2) Marshall knew Downey had a gun and may have himself been armed; (3) Marshall told his daughters' babysitter that he and Mark Downey entered through the front door and Richard Strode came in through the back door and "they cut the phone lines, they taped them up, and they shot them;" (4) Marshall admitted knocking Mr. Fink out of his chair and kicking him in the head when Fink tried to grab a gun; and (5) Kim Long, Mr. Strode's girlfriend, testified that Marshall told Downey that he did not want to be present when the couple was shot and that he did not want to see it.

Based on this evidence, it was reasonable for the Supreme Court of Kentucky to conclude that a rational trier of fact could be convinced beyond a reasonable doubt that Marshall intended that Mrs. Fink be killed . The trial judge reasonably inferred from Marshall's actions and statements that he knew and intended that the victims would be shot. Under Kentucky law, circumstantial evidence is sufficient to determine complicity. *Waters v. Kassulke*, 916 F.2d 329 (6th Cir. 1990).

Petitioner has not presented any evidence demonstrating that the Kentucky Supreme Court's ruling was contrary to or an unreasonable application of federal law. In fact, the Supreme Court permits the death penalty when participation in a felony is combined with reckless indifference for human life, stating:

> [W]e hold that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.

*Tison v. Arizona*, 481 U.S. 137, 158 (1987). Because the record in the instant case shows that Petitioner acted in complicity with the results of the burglary, we uphold the decision of the lower court.

**B. Waiver of right to trial by jury.**

On March 4, 1999, Petitioner voluntarily executed a written waiver of a jury trial pursuant to Kentucky Criminal Rule (RCr) 9.26, which stated "I understand that I have the right to a trial by jury as guaranteed by the Constitution of the United States and the Constitution of the Commonwealth of Kentucky Pursuant to RCr §9.26, I am submitting this waiver."

Petitioner's attorney informed the court that he and Marshall had discussed Marshall's options at length and that Marshall understood his rights. On May 6, 1999, the waiver was again submitted to the trial court, which read aloud Rule 9.26, requiring that cases be tried by a jury unless the defendant waives the right in writing with approval of the court and consent of the government. The bench trial only began after the waiver was executed.

Marshall now contends that he did not validly waive his right to trial by jury because the court did not question him about his decision to waive the jury trial. Although such questioning in open court may be preferable, there is no constitutional right to receive an on-the-record colloquy of the waiver. *Sowell v. Bradshaw*, 372 F.3d 821, 832-34 (6th Cir. 2004). Petitioner is therefore unable to show that the waiver was made involuntarily or that the decision of the Kentucky Supreme Court to uphold the waiver was contrary to or an unreasonable application of federal law.

**C. Impact of Strode's testimony on Petitioner's Sixth Amendment rights.**

Petitioner contends that the trial court improperly admitted testimony by Wilbur Strode (Richard Strode's father) in which he stated that his son told him that he possessed only a can of

pepper spray, not a gun, during the burglary. Petitioner contends that this testimony was inculpatory toward Petitioner because another witness had testified that a gun was being loaded in the backseat either by Strode or Marshall. Wilbur Strode's testimony therefore implied that Marshall, not Richard Strode, was loading the gun in the backseat.

Although the prosecution claimed that the testimony fell under a hearsay exception - that it was a statement against penal interest by a codefendant - the Supreme Court of Kentucky found error because the government never showed that Strode, the declarant, was unavailable to testify. Nevertheless, the court determined that this error was harmless because the trial court found that Downey, not Marshall, shot Mr. and Mrs. Fink. The district court also held that Marshall failed to demonstrate that the error had a substantial and injurious effect in determining the jury's verdict.

The evidence in the record shows that Wilbur's testimony was not inculpatory and did not have a substantial or injurious effect. The trial court determined that only Downey carried a weapon and that Downey, not Petitioner, shot the victims. Any insinuation, therefore, that Marshall carried a gun at the scene was rejected by the trial court and did not have a substantial or injurious effect. Therefore, the decision of the Supreme Court of Kentucky was not contrary to, or an unreasonable application of, federal law.

**D. Ineffectiveness of counsel claim.**

Petitioner contends that his attorney was ineffective (1) because he failed to call Mark Downey as a witness and (2) because he failed to adequately instruct him on the implications of waiving the jury trial. In order to warrant reversal, petitioner must demonstrate (1) deficient performance - that counsel's performance fell below an objective standard of reasonableness considering the circumstances at the time of trial; and (2) prejudice - that to a reasonable degree of

7

probability, but for counsel's errors, he would have been found not guilty. *Strickland v. Washington*, 466 U.S. 688 (1984).

*1. The failure to call Mark Downey*

Petitioner contends that if called, Mark Downey, the shooter, could have testified that Marshall did not know that Downey would shoot the victims. There is no evidence indicating, however, that Downey would have provided such testimony or that he would not have asserted his Fifth Amendment right not to testify.

As Petitioner concedes, Kim Long had already testified that Downey told her that Marshall did not want to be present when the victims were shot. As the district court noted, Downey, who was married to Marshall's ex-wife, had an acrimonious relationship with Marshall. There is no evidence to suggest that he would have provided information that would have exculpated Marshall and resulted in a not guilty verdict.

*2. Advising Petitioner to waive jury trial.*

The record shows that defense counsel consulted with Petitioner regarding the waiver decision and that Petitioner voluntarily agreed to waive the jury trial. There is no evidence in the record to suggest that the decision to waive the jury trial was unreasonable or would have resulted in a not guilty verdict. In fact, the decision to waive the jury trial may have even been an attempt to diminish the possibility that a death sentence would be imposed. As the Supreme Court has held, "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91 (1955)).

Because the Petitioner has not demonstrated that the district court's ruling was either contrary

to or an unreasonable application of federal law, we **AFFIRM** the district court's decision.