Danny Lee **CARVER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2007–SC–000428–MR.

Supreme Court of Kentucky.

Jan. 21, 2010.

Thomas More Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Commonwealth of Kentucky, Susan Roncarti Lenz, Assistant Attorney General, Commonwealth of Kentucky, Criminal Appellate Division, Frankfort, KY, for appellee.

**114**

## MEMORANDUM OPINION
## OF THE COURT

Appellant, Danny Lee Carver, was convicted by an Allen Circuit Court jury in April 2007 of first-degree burglary, third-degree criminal mischief, third-degree terroristic threatening, carrying a concealed deadly weapon, and of being a first-degree persistent felony offender (PFO). For these crimes, Appellant was sentenced to fifty years in prison. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

Appellant asserts six arguments in his appeal: (1) statements he made before receiving the *Miranda* warnings were inadmissible at his trial, (2) the prosecutor's questioning and closing argument in the guilt phase of trial was improper, (3) a directed verdict of acquittal on the offense of burglary in the first degree should have been granted, (4) the prosecutor's closing argument in the penalty phase of trial was improper, (5) the evidence presented was insufficient to support the first-degree PFO conviction, and (6) his sentence is so disproportionate to the crime alleged that it constitutes cruel and unusual punishment. For the reasons set forth herein, we reverse Appellant's first-degree PFO conviction, affirm his other convictions, and remand for resentencing.

On or about the night of April 15, 2006, a disturbance occurred at the home of Kevin Witcher. Samantha Deloe, Witcher's live-in girlfriend, testified that she discovered Appellant in the house slumped over in a chair when she returned from the Allen County Fair demolition derby. As she approached Appellant, he jumped up exclaiming that he did not break into anyone's house. Deloe then called Witcher, who returned home to confront the then unknown intruder. A fight ensued between Witcher and Appellant. Witcher testified that the fight occurred because Appellant was combative.

Appellant's testimony indicated a different version of events leading to the fight. He testified that he had been asked to leave the demolition derby due to excessive intoxication and that Witcher gave him a ride. He said that he and Witcher drank most of the night before going together to the Witcher/Deloe residence. Appellant testified that the fight started over work his brother performed for Witcher's mother.

When the fight between Witcher and Appellant became more intense, Deloe called the Scottsville Police. Officer Brandon Ford and Sergeant Jeff Cooke arrived on the scene to find Appellant conscious but face down in the yard, having been physically beaten by Witcher. Appellant was immediately handcuffed and placed in the police cruiser. Both police officers testified that Appellant was out of control and combative at the scene. Therefore, neither of the police officers frisked Appellant for weapons before placing him in the police cruiser.

Officer Ford and Sergeant Cooke investigated and discovered at the house an air-conditioner unit knocked out of a window and laying on the ground, a cut-up pillow and pillowcase, a cut-up old baby car seat, and several cans of beer in a toy chest next to the chair where Deloe testified she discovered Appellant. Both Witcher and Deloe testified that the state of these objects was different from when they had left to attend the demolition derby. As the officers questioned witnesses at the scene, Appellant kicked the back window of the police cruiser out of its track.

Because of concern for injury he may have sustained in the fight, Appellant was taken to the hospital for a check up. The police officers removed Appellant's handcuffs so that he could be properly x-rayed.

As one of the hospital staff aided Appellant, he knocked over a table and raised a knife, which he flourished. Sergeant Cooke immediately asked Appellant what he was doing with a knife. Appellant responded by saying that Sergeant Cooke "needed to have his boy [Officer Ford] check me a little better before he puts me in the car." Eventually, Appellant surrendered the knife. At trial, the knife was identified as a type of steak knife. Deloe testified that the knife was out of a set she owned. Appellant testified that he found the knife on the table he had knocked over at the hospital.

On May 17, 2006, an Allen County grand jury indicted Appellant on the following charges: first-degree burglary, two counts of third-degree criminal mischief, two counts of third-degree terroristic threatening, carrying a concealed deadly weapon, and for being a first-degree PFO. The trial jury found him guilty on all charges except on one of the criminal mischief counts. He was sentenced to fifty years' imprisonment.

I. *THE STATEMENTS APPELLANT MADE PRIOR TO RECEIVING HIS MIRANDA RIGHTS WERE ADMISSIBLE AT TRIAL.*

■■■ Appellant's first argument is that the statements he made at the hospital regarding the knife he brandished were inadmissible at trial because they were made before receiving the *Miranda* warnings. Appellant attacks the admission of his statement because it implies that he had armed himself with a dangerous weapon at Witcher's house, raising his potential crime from second-degree burglary to first-degree burglary. KRS 511.020. No objection was made at trial, so the issue is unpreserved. We find no error.

■■■ Appellant's possession of the steak knife at the hospital created a safety risk to hospital staff, patients, police officers, and himself. An exception to the *Miranda* warning requirement exists when public safety is at risk. *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). There are "situation[s] where concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in Miranda." *Id.* at 653, 104 S.Ct. 2626. Hence, police officers in potentially dangerous situations can ask questions that are necessary to establish safety but may not ask questions that are designed to elicit testimonial evidence from the suspect. *Id.* at 658–59, 104 S.Ct. 2626.

Once Appellant flashed the knife, Sergeant Cooke had a duty to quickly disarm him and ascertain how he obtained it, lest he acquire another. Sergeant Cooke's question was not intended to prompt a confession or provide incriminating evidence but was simply the officer's attempt immediately to diffuse a dangerous situation. While it may have been preferable for the police officers to provide the *Miranda* warnings prior to taking Appellant to the hospital, his belligerent and combative nature made such warnings difficult, if not impossible, to provide.

Appellant's argument, however, fails at a more fundamental level. The rationale of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which has not changed throughout the factual variations of its progeny, is that an accused person in police custody is inherently under pressure, subtle or overt, to speak to police when he ought to keep silent. *Miranda* refers to the "compulsion [to speak] inherent in custodial surroundings ...," *Id.* at 458, 86 S.Ct. 1602, and holds that "a warning [of the right to remain silent] is an absolute prerequisite in overcoming the inherent pressure of the interrogation atmosphere." *Id.* at 468, 86 S.Ct. 1602.

Here, Appellant was technically in police custody in the hospital x-ray room; but he was not in an inherently oppressive interrogation atmosphere. In fact, he had temporarily taken control and command of the situation by force at the point of the knife; and it was during his control of the x-ray room that the officer excitedly asked what Carver was doing with the knife. The fact that his answer was not directly responsive to the question shows that Appellant was not succumbing to the inherent pressure of police custody. He was, instead, in open defiance of it. Requiring police officers to issue a *Miranda* warning to the suspect holding them at knifepoint or gunpoint does nothing to further the *Miranda* decision's goal of protecting and preserving Fifth Amendment Rights. Hence, admitting Appellant's statements at the hospital regarding the knife was not error.

Appellant contends that without the statement, the evidence is insufficient to establish that he was armed at the scene of the burglary and, therefore, insufficient to sustain the first-degree burglary charge. Yet, adequate evidence existed to prove that Appellant had the knife when he left the house. (Interestingly, he concedes in his argument that the fifty-year sentence is excessive that the knife was in his pocket while at the residence.) Deloe testified at trial that the knife belonged to a set of knives she owned. Additionally, the police officers testified that Appellant could not have armed himself while he was in custody during the time he was handcuffed.

## II. *THE PROSECUTOR'S QUESTIONING AND CLOSING ARGUMENT IN THE GUILT PHASE WERE NOT ERRONEOUS.*

■ Appellant next argues that the prosecutor asked inappropriate questions and gave an inappropriate closing argument in the guilt phase of trial. Appellant

failed to object and so we review for palpable error. RCr 10.26.

■ Appellant first contends that the prosecutor asked Sergeant Cooke multiple questions that impermissibly elicited his opinion as to Appellant's guilt. On redirect, the prosecutor asked:

Prosecutor: Based upon what you saw that night, how everybody was acting, how he [Appellant] was acting, what all happened, did you form an opinion as to whether or not you believed [the version of events Appellant told him that night]?

[Sergeant Cooke responded that there are two sides to every story, and his job is not to take sides.]

Prosecutor: Based upon, you're there, you saw what happened, you saw how people reacted to each other, you saw the scene, you went through the house, you talked to Mr. Carver, you saw how he was acting, and you got to observe how he was acting for the next several hours. Okay. Is there anything that makes you think, based upon all of that, that he was telling you the truth?

Sergeant Cooke: No.

Prosecutor: There simply wasn't anything at all that made you think he was telling you the truth?

[Sergeant Cooke responded that he would take the word of four witnesses over one person's word.]

Prosecutor: When you put the whole ball of wax together, was there anything that made you believe he [Appellant] was telling you the truth?

Sergeant Cooke: No.

These questions were asked in response to Appellant's cross-examination of Sergeant Cooke. During cross-examination, Appellant attempted to impeach Sergeant Cooke's testimony by introducing into evi-

dence a memorandum he wrote four months after the incident, which appeared sympathetic to Appellant's version of the facts. The prosecutor objected to Appellant's use of the memorandum and, on redirect, was attempting to show that the memorandum was just a report of the incident, not Sergeant Cooke's opinion on Appellant's truthfulness.

■ In light of Appellant's cross-examination of Sergeant Cooke, it becomes clear that the prosecutor's redirect questioning was an attempt to rebut Appellant's cross-examination. Responding to attempted impeachment evidence is allowed on redirect. *See Sanders v. Commonwealth*, 801 S.W.2d 665, 675 (Ky.1990) (holding that defense questioning on cross-examination can open the door to certain redirect examination). We cannot find that Appellant suffered manifest injustice from this questioning. While it is entirely inappropriate for a prosecutor to ask questions that give a witness the chance to comment on a defendant's guilt, these questions were not so egregious to rise to the level of palpable error. Additionally, the jury was admonished by the trial judge that they are the judge of witness credibility and, therefore, knew they had the option to discount Sergeant Cooke's testimony. *See Tamme v. Commonwealth*, 973 S.W.2d 13 (Ky.1998) (holding that jurors are presumed to follow an admonishment from the court). The prosecutor's questions are not palpable error.

■ Appellant next argues that the following redirect questioning of Officer Ford was improper. Appellant failed to preserve any objection to this line of questioning:

Prosecutor: Okay. So, basically, what everything they're [Witcher and Deloe] saying is being backed up by your own senses?

Officer Cook: Correct.

Prosecutor: His version, what was it backed up by?

Officer Cook: Nothing.

Prosecutor: At this point, given the questions you've been asked, do you feel like [Appellant] ought to be uncharged?

Officer Ford: No sir.

Prosecutor: Is there anything that's been [said], to change your opinion in any way about. . . .

Officer Ford: No sir.

These questions were asked in response to Appellant's cross-examination where he attempted to discredit Officer Ford's prior testimony. Appellant attempted to imply that since Officer Ford arrived at Witcher's house after the fight ended, he could not be a credible source of information on what happened that night. The defense attempted to show that the police jumped to conclusions and failed fully to investigate. The prosecutor's questions were, thus, designed to rebut Appellant's impeachment by showing that Officer Ford saw the condition of Witcher's home, considered all the relevant observations, and still saw fit to charge Appellant with the alleged crimes. Again, while it is inappropriate for a prosecutor to ask questions which give a witness the opportunity to comment on a defendant's guilt, these questions were not improper and do not rise to the level of palpable error.

■ Appellant next argues that during the guilt phase closing arguments, the prosecutor impermissibly vouched for the honesty of the police officers and other prosecution witnesses. "Any consideration on appeal of alleged prosecutorial misconduct must center on the overall fairness of the trial. In order to justify reversal, the misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair." *Stopher v. Common-*

*wealth*, 57 S.W.3d 787, 805 (Ky.2001) (citations omitted).

The prosecutor first commented, "Do I think that the officers are going to come in here and ... commit perjury, lie, plead on a falsehood, risk felony charges themselves, risk being fired, risk their pensions, risk everything else? Samantha Deloe, I have no idea whatsoever why she would come in here and lie." Appellant argues that this constituted vouching for the credibility of witnesses and is impermissible. *United States v. Garza*, 608 F.2d 659, 664 (5th Cir.1979); *United States v. Francis*, 170 F.3d 546, 550 (6th Cir.1999).

These statements do not constitute the expression of opinion as to the credibility of the witnesses. The prosecutor simply argued the point that the witnesses had no reason to lie. This was a fair comment on the credibility of his witnesses in light of Appellant's trial strategy to show that all of them were lying. The jury had previously been instructed by the trial judge that they are the ultimate judge of a witness's credibility. These statements did not undermine the fairness of Appellant's trial or his due process rights. There is no error here.

 Finally, Appellant argues that this comment by the prosecutor was improper:

Part of the reason we're discussing first-degree burglary, and [Appellant's counsel] commented on that, is, quite frankly, that's the most serious charge. That's the one that, quite frankly, he's worried about. Okay? If you come back and compromise out and, and find him not guilty on the first charge or amend it down to the misdemeanor on like a criminal trespass or something like that, quite frankly it's, its going to be the best day that ever happened over at that table. That's just the way the charges are lined up. So that's why we're discussing it.

Appellant further argues that the prosecutor exacerbated his error by telling the jury how to identify misdemeanor offenses in the jury instructions. Appellant believes this statement was improper because it urged the jury to convict him of burglary instead of the lesser included misdemeanor. Appellant argues this is impermissible because sentencing issues should not be raised prior to the penalty phase of a trial. *Norton v. Commonwealth*, 37 S.W.3d 750, 753 (Ky.2001). We agree that the potential sentence to be imposed should not be raised in the guilt phase of a trial, but we conclude that the remarks of the prosecutor in this case do not raise a sentencing issue. Moreover, we note that it is permissible during the guilt phase to discuss the differences in the elements of the various offenses described in the instructions. These jury instructions contained the standard, yet curious, requirements that the jury must find under the burglary charge that the offense was committed "before the finding of the indictment" and, under the trespass charge, that the offense was committed "within twelve months before the finding of the indictment." Taken in context with the entire argument, it is apparent that the prosecutor felt a need to explain that instruction, which to a jury may seem strange, it being hard to imagine how an indictment may be returned before the commission of the crime charged therein. His argument was clumsily phrased but did not prejudicially stray into the arena of comment on sentencing and, thus, did not deprive Appellant of a fair trial.

The prosecutor's statements only explained why he had spent so much time discussing first-degree burglary. The comment does not allude to the fact Appellant was charged with being a PFO. It is permissible to allow the prosecutor the

opportunity to plead for the outcome he hopes the jury reaches. *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987) (holding that both parties have great leeway in making closing arguments). There is no error here.

III. *THE TRIAL COURT PROPERLY DENIED APPELLANT'S DIRECTED VERDICT MOTION ON THE CHARGE OF FIRST–DEGREE BURGLARY.*

 Appellant next argues that he should have received a directed verdict of acquittal on the offense of first-degree burglary. KRS 511.020. Appellant argues that there was insufficient evidence presented to show he entered Witcher's house intending to commit a crime. In particular, Appellant argues that on the night in question, he was excessively intoxicated and, hence, unable to form the intent to commit a crime. KRS 501.080.

KRS 511.020 states:

(1) A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

 (a) Is armed with explosives or a deadly weapon; or

 (b) Causes physical injury to any person who is not a participant in the crime; or

 (c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

 A trial court's decision regarding a directed verdict motion is reviewed under the standard articulated in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky.1991):

On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Id.* at 187.

Under this standard, the trial court properly denied Appellant's motion for a directed verdict of acquittal on the charge of first-degree burglary. The evidence presented allows a reasonable juror to believe that Appellant was inside Witcher's house with the intent to commit a crime. Deloe testified that the steak knife Appellant brandished at the hospital came from a set of knives she owned, strongly implying that the knife was stolen. Further, the destroyed pillowcase, cut-up car seat, and displaced beer amply support the inference that Appellant was looking for something to steal or that he intended to commit the crime of criminal mischief. *See Anastasi v. Commonwealth*, 754 S.W.2d 860, 862 (Ky.1988) ("Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence."). The evidence of his intoxication was not so compelling as to completely negate the issue of intent. Hence, it was not unreasonable for a jury to find Appellant guilty of first-degree burglary.

The trial court properly denied the motion for a directed verdict of acquittal on the charge of first-degree burglary.

## IV. THE PROSECUTOR'S CLOSING ARGUMENT IN THE PENALTY PHASE OF TRIAL WAS NOT REVERSIBLE ERROR.

▮▮▮▮ Appellant's next argument is that the prosecutor made improper comments during the penalty phase closing argument. Again, we review to see if the comments violated Appellant's constitutional due process rights or caused him a fundamentally unfair trial. *Stopher*, 57 S.W.3d at 805. The first statement Appellant alleges to be error is:

The persistent felony offender. Quite frankly, the burglary first degree, the penalty range is ten to twenty. That's the way it is. If somebody has a weapon in somebody's home, the Legislature just says, "You know, we can't have that." We can't have people, you have to be safe in your own home. That's just part of it. If they're a first time person that come in, it's a, it's a 19–year–old kid who does something stupid and comes in, realistically, you also have to trust that we're, we're not going to try and tag a first-time offender and throw him in there. You try and give people who come in the first time a break. That's just the way it is. That doesn't apply here.

Appellant argues that this comment was improper because the prosecutor was telling the jury that he has already considered leniency and determined that a lenient sentence is inappropriate. *Cf., Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (holding that prosecutor's closing argument at penalty phase, which diminished the jury's responsibility for the sentence to be imposed, held improper). However, the trial record indicates that this comment only referred to the long list of Appellant's prior convictions that were presented to the jury as evidence to support a PFO conviction and an enhanced sentence. The prosecutor is allowed to make comments regarding the evidence presented. *Slaughter*, 744 S.W.2d at 411–12. The prosecutor's comments do not constitute error.

▮▮▮ Appellant then argues that the prosecutor improperly encouraged the jury to send a harsh message to the community through their sentence:

If he were the only person that knew about this, that's fine. But this is going to go in the paper, and he's not the last defendant we deal with. And he's not the only person getting charged in Allen County. He's not the last, the only person who's going to know about this. Quite frankly, people who have multiple ——. I understand, you've got to be sitting there thinking, "Man, that's a lot of time." But when you count up the number of sentences he's had over those years. Okay? People who are convicted of felony crimes have a much better feel for the penalty ranges they're looking at, doing conduct, than you do because you've never seen it before. But if you have two, three, or four, or five felony convictions, you know, because you've had discussions with attorneys, and you've looked at the penalty ranges, and you've seen all this stuff.

Appellant argues that these comments were an attempt by the prosecutor to cajole the jury into "sending a message" against crime in Allen County. Such comments have been held to be inappropriate in closing arguments. *United States v. Solivan*, 937 F.2d 1146, 1156 (6th Cir. 1991). The comment only briefly alludes to the fact that the sentence to be imposed may have some deterrent effect on other repeat offenders; and it points out that unlike the ordinary juror, repeat offenders

are likely to be familiar with the severe penalty range established for persistent felony offenders. Those are legitimate comments that put perspective on the range of penalty that the jury has to consider.

The prosecutor's comments do not rise to the level of palpable error. While "send a message" arguments are impermissible, the comments the prosecutor made here are mild compared with other "send a message" comments we found not to constitute palpable error. *See Young v. Commonwealth,* 25 S.W.3d 66, 73 (Ky.2000) (comment that the defendant's sentence would "send a message throughout this community [that if] you start manufacturing methamphetamine in Muhlenberg County . . . you're gonna receive the maximum punishment that we can give you," and "[t]o send a message to these people to discontinue this type of activity [ ]" found not to constitute palpable error); *Commonwealth v. Mitchell,* 165 S.W.3d 129, 131 (Ky.2005) (statement "if we are ever to make a dent in a terrible drug problem we've got, prescription drugs with Oxycontin, it's time to send a message to this defendant and to this community that we're going to punish drug dealers for doing what they're doing. It's time we send a message," found not to be palpable error); *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky.2006) (prosecutor's comments including, "And, they're going to hear about the way an Owen County jury views all of this, and so that's important. The community's going to know about it. They're going to know whether or not we have the backbone to stand up to it. And, so there is a message with your sentence and you've got to consider that" found not to be palpable error). While we strongly disapprove of an attempt to get a jury to render a verdict based on sending a message to the community, the comments here do not constitute palpable error.

## V. THE EVIDENCE FOR APPELLANT'S FIRST–DEGREE PFO CONVICTION WAS SUFFICIENT, BUT THE JURY INSTRUCTION IS A PALPABLE ERROR.

Appellant next argues that there was insufficient evidence to support his conviction for being a first-degree persistent felony offender. This argument is unpreserved, and so we will review under our palpable error standard. RCr 10.26. He specifically cites two reasons for the purported insufficiency: (1) one of the prior offenses in the jury instruction was a misdemeanor, and (2) there was no proof of his age.

■ Although the jury instruction was incorrect, the evidence was ample to support a first-degree PFO conviction. The jury instruction as tendered for the first-degree PFO charge instructed the jury that Appellant could be found guilty of being a first-degree PFO if it found beyond a reasonable doubt, among other things:

> That prior to April 16, 2006, the defendant was convicted of Attempt to Commit Third-degree Arson in case No. 93–CR–00007, by final judgment of the Allen Circuit Court entered on September 10, 1993; and

> That prior to April 16, 2006, the defendant was convicted of Theft by Unlawful Taking Over $300 in case No. 05–CR–00083, by final judgment of the Allen Circuit Court entered on February 9, 2006.

Appellant correctly notes that attempt to commit third-degree arson is a Class A misdemeanor and not a felony. *See* KRS 506.010(4)(d) (attempt to commit a Class C or D felony like third-degree arson is a Class A misdemeanor). Hence, Appellant reasons that the jury could not convict him of being a first-degree PFO under this

jury instruction because, as a matter of law, only one of the offenses identified therein was a felony.

To prove the elements of the offense of PFO, the Commonwealth presented the testimony of the Allen Circuit Clerk. The clerk testified to Appellant's prior convictions. In addition to Appellant's more than twenty misdemeanor convictions, the clerk testified to Appellant's five prior felony convictions. Three of those felonies, plus the misdemeanor erroneously placed in the instructions, were contained in separate indictments but resulted in final judgments all entered in September 1993. Thus, for purposes of a PFO charge, those offenses constitute only one prior conviction. KRS 532.080(4). Those three felonies are: (1) third-degree arson (Indictment 92–CR–00052), (2) first-degree bail jumping (Indictment 93–CR–00033), and (3) receiving stolen property over $300 (Indictment 93–CR–00041). The misdemeanor conviction was case number 93–CR–00007. Any of the three felony convictions from September 1993 would qualify as one element of the PFO charge. On October 25, 1995, Appellant was convicted again of receiving stolen property over $300 (Indictment 95–CR–00009). That conviction stands as a second qualifying conviction for the PFO charges. Finally, Appellant was convicted on February 9, 2006, for the felony offense of theft by unlawful taking over $300 (Indictment 05–CR–00083). That conviction stands as a third qualifying conviction.

Initially, the jury instructions for the PFO charge contained as elements of that crime only the latter two indictments. To be certain that the Appellant was, in fact, the same "Danny Lee Carver" named in each felony conviction, the clerk had testified to the birth date and social security number identifying the defendant on each case. All cases showed the same birth date; but one case, Indictment 95–CR–00009, showed a social security number (XXX–X0–XXX0) with two digits different from all the others (XXX–X2–XXX2). With very little discussion and no objection, that felony conviction was removed from the jury instructions; and one of the four convictions from September 1993 was inserted. Although any of the September 1993 felony convictions could have been selected, attempted third-degree arson was chosen. As was later realized, that offense is actually a misdemeanor.

■ Appellant next argues that the first-degree PFO conviction should be overturned because the Commonwealth failed to prove beyond a reasonable doubt that the prior felony offenses were committed when Appellant was over the age of eighteen. At trial, the Commonwealth presented the date of the final convictions for each of the felonies but failed to present any evidence of the date on which the crimes were committed. Evidence was presented, however, that Appellant was born in 1957 and that most of the felony convictions occurred in the 1990s.

In *Martin v. Commonwealth*, 13 S.W.3d 232 (Ky.1999), it was held that a "reasonable inference" made by the jury on a necessary element satisfies the requirements of the PFO statute. *Id.* at 235, *overruling Hon v. Commonwealth*, 670 S.W.2d 851 (Ky.1984). A "reasonable inference ... is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven." *Id.* In this matter, the jury was given the birth date of the Appellant and the dates of the convictions for the felonies. The jury could make a reasonable inference that since Appellant turned eighteen in 1975 that he likely committed at least two of these felonies after that date since the prosecution for the felonies did

not occur until the 1990s. There is no error or palpable error here.

Although we reject Appellant's argument that there was insufficient evidence to prove his age, we conclude that his first-degree PFO conviction must be reversed because of the erroneous jury instruction that listed a misdemeanor as a qualifying felony conviction. We believe that palpable error occurred because of (1) the improper inclusion of a misdemeanor as a qualifying conviction in the PFO instruction; (2) our presumption that erroneous jury instructions are prejudicial, *Harp v. Commonwealth,* 266 S.W.3d 813, 818 (Ky. 2008); and (3) the fact that Carver was assessed the maximum possible penalty.

When a jury is accepted to try a case, it must swear to try the case in accordance with the evidence and the law. The evidence comes from the witness stand; the law comes from the court through the instructions. Here, under the instructions of the trial court, the jury found Appellant guilty of being a persistent felony offender in the first degree under an instruction that establishes the elements only for a persistent felony offender in the second degree. In other words, the jury found beyond a reasonable doubt only that Appellant had one prior misdemeanor and one prior felony.

There is no question that Appellant could qualify as a first-degree persistent felony offender. Moreover, there is no doubt that there was ample evidence presented at trial for him to have been convicted accordingly, had the jury been properly instructed. Nevertheless, the jury was instructed on a prior misdemeanor and a prior felony, as opposed to two prior felonies. It was upon this instruction that Appellant was convicted.

Facts are stubborn things. No amount of explanation or evidence at trial can change this indisputable truth. A duly selected and properly sworn jury found by unanimous verdict that Appellant had been convicted of attempt to commit third-degree arson, a misdemeanor, and theft by unlawful taking over $300.00, a felony. Such an instruction would permit finding Appellant to be a second-degree persistent felony offender. However, we, as an appellate court, cannot affirm a conviction for a status greater than that which the jury instructions would permit.

It is unreasonable for a jury to convict an individual without properly having been instructed as to the elements of the crime. In *Harper v. Commonwealth,* this Court held that failure to instruct the jury on the element of intent in a charge for complicity was reversible error. 43 S.W.3d 261, 263–64 (Ky.2001). Similarly, in *Varble v. Commonwealth,* this Court reversed a conviction for manufacturing methamphetamine because the jury had actually been instructed on the lesser offense of possession of drug paraphernalia. 125 S.W.3d 246, 255 (Ky.2004). Other courts have also recognized that a conviction cannot stand if the jury instructions did not include an essential element of the offense.[1] These cases illustrate the necessary recourse when the jury is not in-

1. *See State v. Mills,* 154 Wash.2d 1, 109 P.3d 415, 422 (2005) (reversing conviction for felony harassment and remanding for new trial for failure to instruct the jury on all statutory elements); *Smith v. State,* 459 N.E.2d 355, 358 (Ind.1984) (finding reversible error and remanding for new trial due to failure to instruct the jury on the requisite intent to convict of attempted murder); *U.S. v. Stansfield,* 101 F.3d 909, 922 (3rd Cir. 1996) (holding omission of intent to kill element constituted error, consequently reversing and remanding); *Chambers v. People,* 682 P.2d 1173, 1177 (Colo.1984) (reversing second-degree kidnapping conviction because jury was not instructed as to culpability).

structed fully as to the elements of the crime at hand—reversal and remand.

Accordingly, reversal of the PFO issue is required; and we would remand for a new trial of the PFO only. A retrial on the PFO conviction seems to be a small price to pay to protect the integrity of our jury instructions. Because we now reverse Appellant's PFO conviction and remand for new PFO proceedings and any other proceedings consistent with this opinion, all other arguments regarding the appropriateness of his enhanced sentence are now rendered moot.

## VI. *CONCLUSION.*

For the reasons set forth herein, the judgment and sentence of the Allen Circuit Court is affirmed, in part, reversed, in part, and remanded for a new PFO proceeding.

All sitting. MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, and VENTERS, JJ., concur.

SCOTT, J., concurs, in part, and dissents, in part, by separate opinion.

SCOTT, J., concurring, in part, and dissenting, in part:

Although I concur with the majority on all other issues, I must respectfully dissent on Issue V for reasons the error was harmless. You can never have "palpable error," if the error is—as it was here—harmless. Here, three (3) other felony convictions of Appellant were in evidence—none of which were significantly questioned. Thus, the fact that the trial court erroneously inserted the misdemeanor in the instruction was plainly harmless. What I fear we are doing here is creating a class of palpable error *lower than preserved error.*

To find "palpable error"—as opposed to structural error—you must reach a level

*higher* than harmless error; otherwise, palpable error would be a lower standard than preserved error, which, if harmless, is not reversible. While the instruction itself was admittedly defective because it misnamed the misdemeanor conviction as a prior felony conviction, the evidence presented to the jury included *multiple felonies,* any of which would have been sufficient to sustain the judgment from which this appeal is taken. In fact, there is no reasonable doubt that—had Appellant objected and put the trial court on notice of the problem—one of the other felony convictions would have been properly inserted in the instructions to correct the error; and the outcome of this case would have been exactly the same.

Thus, given this error was harmless beyond any doubt, I must respectfully dissent.