**Boyd Daniel MATTHEWS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2010–CA–001157–MR.

Court of Appeals of Kentucky.

Oct. 14, 2011.

Discretionary Review Denied by Supreme Court Aug. 15, 2012.

**5.** United States Code.

Roy A. Durham II, Assistant Public Advocate, Dept. of Public Advocacy, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Jason B. Moore, Assistant Attorney General, Frankfort, KY, for appellee.

Before DIXON, LAMBERT, and VANMETER, Judges.

## OPINION

LAMBERT, Judge:

Boyd Daniel Matthews appeals from the final judgment of the McCracken Circuit Court convicting him of first-degree trafficking in a controlled substance (cocaine) and for being a first-degree persistent felony offender. As a result of these convictions, Matthews received an enhanced sentence of seventeen years' imprisonment. After careful review, we affirm the conviction.

On June 11, 2009, Detective Matt Wentworth of the Paducah Police Department's drug unit set up an undercover buy through a confidential informant (CI).[1] Detective Wentworth gave the CI cash to purchase the drugs, wired him for video and audio recording, and dropped him off at the proper location. Detective Wentworth and other officers monitored the CI as he met with and purchased crack cocaine from a person who was unfamiliar to the officers. The CI asked for and received the drug dealer's telephone number.

A few weeks later, Detective Wentworth and another officer encountered the same person, whom they recognized from his unusual forked beard. They approached the man, who identified himself as Matthews, the appellant in this case, and they arrested him on an active bench warrant for failure to appear or pay a fine. The officers searched Matthews, recovered two cell phones and plastic baggies, and transported him to the police department. While at the police department, Detective Wentworth took the cell phones to another room and dialed the drug unit's number to check the cell phone's number on the office phone's caller ID. One of the phones had the same number as the number given to the CI by the drug dealer following the buy on June 11. He then scrolled through the contact information on both phones. Detective Wentworth also photographed Matthews.

---

1. We shall not use the CI's name to protect   his identity.

Rather than charging Matthews with a crime at that point, Detective Wentworth talked with Matthews about becoming a confidential informant, and he agreed. Detective Wentworth returned the phones to Matthews upon his release and provided Matthews with a telephone number where he could be reached. Matthews was to contact the detective at some point in the near future to set something up, but he never did. When Detective Wentworth contacted him weeks later, Matthews told him he was no longer interested in becoming a confidential informant. Detective Wentworth then filed charges against Matthews for trafficking based upon the CI's photographic identification of Matthews as the drug dealer at the June 11 buy. In September 2009, the McCracken County grand jury indicted Matthews for trafficking in a controlled substance, cocaine, first offense (Kentucky Revised Statutes (KRS) 218A.1412) and for being a PFO I (KRS 532.080).

Following his indictment, Matthews moved to suppress the evidence Detective Wentworth obtained from the two cell phones that were seized and searched without a warrant when Matthews was picked up on the active bench warrant in late June. He argued that he had a reasonable expectation of privacy in the contents of the phones and that his arrest had nothing to do with drug trafficking or any other substantive offense, citing *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). The circuit court held a hearing at which the only witness to testify was Detective Wentworth. In an order entered March 26, 2010, the circuit court suppressed the search of the contact list on the cell phone because it was not a search incident to his arrest and because Matthews had a reasonable expectation of privacy, citing *Gant* and *United States v. Quintana*, 594 F.Supp.2d 1291 (M.D.Fla. 2009). However, the circuit court declined to suppress the identification of the numbers assigned to the seized cell phones because Matthews' expectation of privacy was not legitimate, citing *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). It also declined to suppress Detective Wentworth's process to identify the number and his subsequent call to that number.

Also prior to trial, Matthews sought to preclude the admission of Kentucky Rules of Evidence (KRE) 404(b) evidence of prior bad acts consisting of four phone calls, which was resolved in an Agreed Order providing that the Commonwealth could not introduce the evidence in its case-in-chief, but could introduce it on rebuttal if a proper foundation had been laid. Matthews also sought to suppress the results of the photo identification, which the parties discussed the day of trial. The circuit court ultimately denied the motion to suppress in a post-trial order, finding the identification was reliable, but noted that the line-up identification was not presented to the jury at trial.

The matter proceeded to trial on April 5 and April 6, 2010. The Commonwealth offered testimony from the officers involved in the controlled buy as well as from the CI, who identified Matthews as the person from whom he had purchased the crack cocaine on June 11, 2009. Matthews testified in his own defense, stating that he was not the person who appeared in the audio and video recordings of the controlled buy and that he had been out of the state with his brother at the time of the transaction. The jury returned a verdict of guilty on the trafficking charge and following the penalty phase, found Matthews guilty of being a PFO I and recommended a sentence of ten years on the trafficking conviction enhanced to seventeen years by the PFO I conviction.

At the conclusion of the trial, the circuit court expressed some concern that the Commonwealth had not proved the elements of the PFO I charge in that it might not have established that Matthews was eighteen years old at the time he committed a trafficking offense, for which offense he was convicted in 1999. The circuit court ordered the parties to brief the issue and later ruled that the jury could make a reasonable inference that Matthews committed the felony after he reached the age of eighteen, citing *Carver v. Commonwealth*, 303 S.W.3d 110 (Ky.2010). The court then entered its final judgment and sentence of imprisonment in accordance with the jury's verdict on June 10, 2010. This appeal now follows.

On appeal, Matthews raises six issues for our consideration: 1) whether the circuit court properly ruled on the motion to suppress regarding the search of the cell phones; 2) whether the circuit court properly admitted evidence of a letter Matthews attempted to pass to another inmate; 3) whether the Commonwealth made improper statements in its closing argument; 4) whether the Commonwealth proved all of the elements of the PFO I charge; 5) whether the trial judge should have *sua sponte* recused; and 6) whether cumulative errors denied him his right to a fair trial.

The first issue we shall address is whether the circuit court properly ruled on the motion to suppress. In his initial brief, Matthews appears to state that the circuit court denied his motion to suppress in its entirety, which the Commonwealth pointed out was incorrect, because the court only denied the motion in relation to the identity of the cell phone number. In his reply brief, Matthews reworks this argument to assert that the court should not have split the results of what he describes as an illegal search and that he had a reasonable expectation that no one would make calls on his cell phone. The Commonwealth also contends that Matthews' argument is moot because no evidence concerning the method Detective Wentworth used to obtain the cell phone number was introduced at trial. We agree with Matthews that this issue is not moot, but we ultimately agree with the Commonwealth that this argument has no merit.

■ Our standard of review from a denial of a motion to suppress is two-fold. First, we must determine whether the findings of fact are supported by substantial evidence. If so, those findings are conclusive. Kentucky Rules of Criminal Procedure (RCr) 9.78; *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998). If not, the factual findings must be overturned as clearly erroneous. *Farmer v. Commonwealth*, 169 S.W.3d 50, 53 (Ky. App.2005). Second, we must perform a *de novo* review of those factual findings to determine whether the lower court's decision is correct as a matter of law. *Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996); *Commonwealth v. Banks*, 68 S.W.3d 347, 349 (Ky.2001); *Garcia v. Commonwealth*, 185 S.W.3d 658, 661 (Ky.App.2006); *Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky.App.2000). Because there are no disputes related to the factual findings, we shall confine our review to whether the decision is correct as a matter of law.

Our first consideration is whether a search actually occurred. The United States Supreme Court set forth the law applicable to this analysis in *Smith v. Maryland*, 442 U.S. 735, 739–40, 99 S.Ct. 2577, 2579–80, 61 L.Ed.2d 220 (1979), which we shall set forth below, in pertinent part:

> The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and ef-

fects, against unreasonable searches and seizures." In determining whether a particular form of government-initiated electronic surveillance is a "search" within the meaning of the Fourth Amendment, our lodestar is *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Katz*, Government agents had intercepted the contents of a telephone conversation by attaching an electronic listening device to the outside of a public phone booth. The Court rejected the argument that a "search" can occur only when there has been a "physical intrusion" into a "constitutionally protected area," noting that the Fourth Amendment "protects people, not places." *Id.*, at 351–353, 88 S.Ct., at 511–512. Because the Government's monitoring of Katz' conversation "violated the privacy upon which he justifiably relied while using the telephone booth," the Court held that it "constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Id.*, at 353, 88 S.Ct., at 512.

Consistently with *Katz*, this Court uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action.... This inquiry, as Mr. Justice Harlan aptly noted in his *Katz* concurrence, normally embraces two discrete questions. The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," 389 U.S., at 361, 88 S.Ct., at 516—whether, in the words of the *Katz* majority, the individual has shown that "he seeks to preserve [something] as private." *Id.*, at 351, 88 S.Ct., at 511. The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,' " *id.*, at 361, 88 S.Ct., at 516—whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is "justifiable" under the circumstances. *Id.*, at 353, 88 S.Ct., at 512. [Footnotes omitted.]

The *Smith* Court ultimately held that the installation and use of a pen register did not constitute a search for Fourth Amendment purposes because Smith could not claim a reasonable expectation of privacy: "[W]e doubt that people in general entertain any actual expectation of privacy in the numbers they dial." *Id.*, 442 U.S. at 742, 99 S.Ct. at 2581. Further, the Court stated that it "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.*, 442 U.S. at 743–44, 99 S.Ct. at 2582. The Court concluded, "that petitioner in all probability entertained no actual expectation of privacy in the phone numbers he dialed, and that, even if he did, his expectation was not 'legitimate.' The installation and use of a pen register, consequently, was not a 'search,' and no warrant was required." *Id.*, 442 U.S. at 745–46, 99 S.Ct. at 2583.

■ In the present case, the circuit court likened the reasoning in *Smith* to the present case, finding that Matthews "in all probability entertained no actual expectation of privacy in his cell number, and even if he did, his expectation would not have been 'legitimate'." We agree with the circuit court's interpretation of the law in this ruling and hold that Detective Wentworth's discovery of the cell phone's number did not constitute a search for Fourth Amendment purposes. Therefore Detective Wentworth did not need to obtain a warrant in order to identify the cell phone number. The circuit court did not err in denying this portion of the motion to suppress, and we reject Matthews' assertion

that the circuit court erred in splitting its ruling based on the actions Detective Wentworth took in obtaining information from the cell phone.

■ Next, Matthews argues that the circuit court erred in denying his pretrial motion *in limine* to exclude evidence of other crimes or bad acts, citing KRE 404(b). Our standard of review of evidentiary rulings is well settled in the Commonwealth. "The standard of review of an evidentiary ruling is abuse of discretion. The test for an abuse of discretion 'is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.' This Court will not disturb the trial court's decision to admit evidence absent an abuse of discretion." *Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky.2007) (footnotes omitted).

The evidence Matthews sought to suppress was a letter he attempted to pass to Fabian Thomas, another inmate of the McCracken County Regional Jail. In the letter, Matthews asked the inmate to contact the CI and keep him from testifying at the trial. He argues that such evidence was not relevant to nor probative of the crime with which he had been charged and was prejudicial to him.

In support of this argument, Matthews cites to *Bell v. Commonwealth,* 875 S.W.2d 882 (Ky.1994), and *Billings v. Commonwealth,* 843 S.W.2d 890 (Ky.1992). In *Billings,* the Court addressed the introduction of evidence concerning prior alleged sexual behavior against the victim's sister. Discussing the applicable law, the Court stated that "evidence of criminal conduct other than that being tried is admissible only if probative of an issue independent of character or criminal predisposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to character." *Id.* at 892. It went on to describe

the traditional rule that "such evidence may be admissible as probative of 'motive, intent, knowledge, identity, plan or scheme, or absence of mistake or accident.'" *Id.* (quoting *O'Bryan v. Commonwealth,* 634 S.W.2d 153, 156 (Ky.1982)). The Court ultimately held that the prior behavior was not strikingly similar to the conduct upon which the defendant was being tried to justify its admission. *Id.*

■ The Commonwealth, on the other hand, argues that Matthews' reliance upon *Billings* and *Bell* is misguided and that this evidence was properly admitted as indicia of his guilt. It relies upon *Foley v. Commonwealth,* 942 S.W.2d 876, 887 (Ky. 1996), in which the Supreme Court upheld the introduction of evidence that the defendant's wife and father attempted to intimidate a witness of the Commonwealth. The Court held:

> Evidence of intimidation of a witness was competent evidence as it was inconsistent with Appellant's innocence. Any attempt to suppress a witness' testimony by the accused, whether by persuasion, bribery, or threat, or to induce a witness not to appear at the trial or to swear falsely, or to interfere with the processes of the court is evidence tending to show guilt. *Collier v. Commonwealth,* Ky., 339 S.W.2d 167 (1960). The attempt does not have to be committed by the accused, but someone acting on his behalf. *Campbell* [*v. Commonwealth,* 564 S.W.2d 528, 531 (Ky.1978) ].

*Foley,* 942 S.W.2d at 887. "Evidence that a witness has been threatened or otherwise influenced in an attempt to suppress his testimony is admissible in a criminal prosecution only where the threat was made by, or on behalf of, the accused." *Id.* at 886.

In addition, the Commonwealth cited to *Rodriguez v. Commonwealth,* 107 S.W.3d

215 (Ky.2003), for its discussion of and holding regarding the admission of evidence pursuant to KRE 404(b)(1) as an expression of a defendant's sense of guilt:

> Under KRE 404(b)(1), evidence of other crimes, wrongs, or acts is not excluded by the rule "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This list of other purposes is "illustrative rather than exhaustive." *Colwell v. Commonwealth*, Ky., 37 S.W.3d 721, 725 (2000). Thus, we hold that the trial court properly admitted the theft of the truck and Rodriguez's subsequent attempt to elude the police because it was evidence of flight from the Save–A–Step robbery and, hence, it was offered for "some other purpose," *i.e.*, an expression of a sense of guilt, within the meaning of KRE 404(b)(1).

*Rodriguez*, 107 S.W.3d at 219–20.

The text of the partially redacted, handwritten letter Matthews attempted to pass to the other inmate reads as follows: [2]

> What Hap Duke of Earl
>
> look man I need you it's a boy out there that has lied on me. Said he bought a .02 or 20 from me for 40 at the Brick House on June 11. I wasn't even here. Keep this on the low. I was in Cape Mo. with my brother but still the boy gets high. He lives on [omitted address information]. I need someone to get with him so he wont come to crout on April 5. He gets high. If you do it don't tell him you are going to get him. Try to pay him so the day af crout he want to come to crout. I don't care. But I need someone to get with. His name is [name omitted]. Tall with brown hair. Duke I need you. If you know [name omitted] he knows the boy.

Tell him to show him to you ok. So man look out. I go to crout on April 5 at 9:00. Come if you can. If you can get Dude to be with you on that day that will be better, and look my bond is 20 tho for a dime bag and (and a Traffing Cas)

> Dan Tana. Almighty Lord.

■ We agree with the Commonwealth that the circuit court did not abuse its considerable discretion by permitting the introduction of the above letter. Clearly, Matthews was attempting to intimidate the CI from testifying against him by passing along this letter to the other inmate. As such, the circuit court properly admitted this evidence pursuant to KRE 404(b)(1).

■ Next, Matthews argues that the Commonwealth's closing argument denied him due process of law. Because this issue was unpreserved by timely objection, Matthews requests that we review this matter for palpable error pursuant to RCr 10.26. "This Court reviews unpreserved claims of error on direct appeal only for palpable error. To prevail, one must show that the error resulted in 'manifest injustice.'" *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006). RCr 10.26 provides:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Matthews contends that the Commonwealth made several improper statements during its closing argument, including

---

**2.** We have not corrected any grammatical or spelling errors, but we have excluded additional information concerning the CI's address.

commenting on Matthews' failure to call any witnesses to support his alibi, misstating the evidence of Fabian Thomas' prior felony convictions, and making an appeal to the community. The Commonwealth, on the other hand, argues that none of these statements rise to the level of palpable error to justify reversal.

We begin by recognizing "the rule in Kentucky that counsel has wide latitude while making opening or closing statements. And it is equally well-established that a prosecutor may use his closing argument to attempt to 'persuade the jurors the matter should not be dealt with lightly.'" *Brewer v. Commonwealth,* 206 S.W.3d 343, 350 (Ky.2006) (citations omitted). The *Brewer* Court goes on to state as follows: "[W]hen reviewing claims of prosecutorial misconduct, we must focus on the overall fairness of the trial and may reverse only if the prosecutorial misconduct was so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings." *Id.* at 349 (citation omitted).

The Commonwealth cites to *Matheney v. Commonwealth,* 191 S.W.3d 599 (Ky.2006), for its discussion of prosecutorial misconduct:

> We follow the approach of the Court of Appeals for the Sixth Circuit when reviewing alleged prosecutorial misconduct, thus
>
> > we reverse for prosecutorial misconduct in a closing argument only if the misconduct is "flagrant" *or* if each of the following three conditions is satisfied:
> >
> > (1) Proof of defendant's guilt is not overwhelming;
> >
> > (2) Defense counsel objected; and
> >
> > (3) The trial court failed to cure the error with a sufficient admonishment to the jury.

*Barnes v. Commonwealth,* 91 S.W.3d 564, 568 (Ky.2002) (citing *United States v. Carroll,* 26 F.3d 1380, 1390 (6th Cir. 1994); *United States v. Bess,* 593 F.2d 749, 757 (6th Cir.1979)). Because Appellant did not object at trial, we need only evaluate whether the prosecutor's misstatement was "flagrant."

*Matheney,* 191 S.W.3d at 606. The *Matheney* Court went on to state in a footnote that "even if Appellant had shown flagrant misconduct, because there was no objection at trial, we would also have to find that Appellant suffered 'manifest injustice' before we could grant any relief to which he might have been entitled as to the unpreserved error." *Id.* at 607 n. 4.

■ Having reviewed the Commonwealth's closing argument, we cannot find any manifest injustice sufficient to justify the granting of any relief in this matter. It was certainly proper for the Commonwealth to attack the credibility of Matthews' alibi testimony by pointing out that he did not call as witnesses any of the people he named, including his mother and brother, nor did he produce any other documentary evidence to support his version of events. Regarding Fabian Thomas' testimony, we agree with the Commonwealth that he never said he had not been convicted for intimidating a witness, but rather stated that he did not know if he had. Finally, the Commonwealth's ."appeal to the community" is more akin to that described in *Crossland v. Commonwealth,* 291 S.W.3d 223, 236 (Ky.2009), wherein the Supreme Court held that "[a] prosecutor's request in closing argument for a jury to find a defendant guilty is proper and falls well within the wide latitude afforded during closing argument[,]" than this Court's holding in *Gaines v. Commonwealth,* 283 S.W.3d 243 (Ky.App. 2008).

For these reasons, we decline to hold that any manifest injustice exists that would support further review or a reversal in this instance.

■ Next, Matthews argues that his PFO I conviction should be reversed because the Commonwealth failed to prove that he was eighteen years old when he committed one of the prior felonies upon which the conviction was based. We agree with the Commonwealth that this issue is squarely addressed by the Supreme Court's holding in *Carver v. Commonwealth*, 303 S.W.3d 110 (Ky.2010).

In *Martin v. Commonwealth*, 13 S.W.3d 232 (Ky.1999), it was held that a "reasonable inference" made by the jury on a necessary element satisfies the requirements of the PFO statute. *Id.* at 235, *overruling Hon v. Commonwealth*, 670 S.W.2d 851 (Ky.1984). A "reasonable inference . . . is a process of reasoning by which a proposition is deduced as a logical consequence from other facts already proven." *Id.* In this matter, the jury was given the birth date of the Appellant and the dates of the convictions for the felonies. The jury could make a reasonable inference that since Appellant turned eighteen in 1975 that he likely committed at least two of these felonies after that date since the prosecution for the felonies did not occur until the 1990s.

*Carver*, 303 S.W.3d at 122–23. In this case, the jury was provided with proof that Matthews' date of birth is December 19, 1966, and that the McCracken Circuit Court convicted him of first-degree possession of a controlled substance on January 19, 1999, when he was thirty-two years old. Based upon this evidence, as well as the Commonwealth's statement that KRS 218A.1415, the statute upon which that conviction was based, did not exist until 1992, the jury could reasonably conclude that Matthews had reached the age of eighteen at the time he committed the offense that resulted in the 1999 conviction.

We decline Matthews' request that we find *Carver* to be incorrectly decided, as we are bound by Supreme Court precedent. *See Smith v. Vilvarajah*, 57 S.W.3d 839, 841 (Ky.App.2000) ("as an intermediate appellate court, this Court is bound by established precedents of the Kentucky Supreme Court. SCR 1.030(8)(a). The Court of Appeals cannot overrule the established precedent set by the Supreme Court or its predecessor court.").

Next, Matthews contends that the trial judge should have *sua sponte* recused because he had been serving as the Commonwealth's Attorney for McCracken County when Matthews allegedly committed the offense on June 11, 2009, and when Matthews was convicted in McCracken County in 1999. Matthews claims that the trial judge's prior involvement makes his impartiality questionable.

Because Matthews did not raise this issue before the trial court, the parties are now disputing whether preservation is required in recusal situations before this Court may review such an issue. Matthews relies upon the Supreme Court's statement in *Nichols v. Commonwealth*, 839 S.W.2d 263, 266 (Ky.1992), that "in regard to the argument regarding recusal, it is not required to preserve the error as noted in *Commonwealth v. Carter*, Ky., 701 S.W.2d 409 (1985). *Also see Small v. Commonwealth*, Ky.App., 617 S.W.2d 61 (1981) in this regard." *Small* provides that "any waiver of such right [to move the trial judge to disqualify himself] may be made under proper circumstances, either in writing or on the record, but will not be presumed from silence." *Id.* at 62. In *Carter*, the Court stated that "[a]lthough we continue to agree that waiver may be properly made as indicated therein, it is our opinion that proper procedure would

be to place the burden of disqualification on the defendant who may belatedly contend that he was prejudiced, rather than upon the judge." *Carter*, 701 S.W.2d at 410.

The *Carter* Court, however, went on to hold as follows:

[I]n those cases in which the party relies upon the failure of any justice or judge of the Court of Justice to disqualify himself under the provisions of KRS 26A.015(2)(b), it must appear from the record, either by motion or otherwise, that he was apprised of his connection with the matter in controversy. This is in accord with every principle of justice relating to preservation of error. Once brought to the attention of the judge or justice, compliance with KRS 26A.015(2)(b) is mandatory.

*Carter*, 701 S.W.2d at 411. And in *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 876 (Ky.App.2007), this Court made the procedure to seek recusal very clear:

As the Kentucky Supreme Court has explained, a party or counsel may seek to disqualify or recuse a judge from proceeding further in a matter either by filing an affidavit pursuant to KRS 26A.020, by filing a motion with the judge pursuant to KRS 26A.015, or by filing both. *Nichols v. Commonwealth*, 839 S.W.2d 263, 265 (Ky.1992). Here, Kenney's counsel filed an affidavit pursuant to KRS 26A.020(1) requesting that the Chief Justice designate a special judge for the matter. The Chief Justice denied Kenney's request, finding that the affidavit did not demonstrate any disqualifying circumstances. Kenney did not, however, move for the trial judge to recuse. Indeed, Kenney's counsel stated in his affidavit to the Chief Justice that he chose to only utilize KRS 26A.020 because he had "tried to use a formal Motion to Recuse in

another matter before Judge Isaac and realize[d] that such a request is futile. Judge Isaac's animosity and bias against me is such that she would simply refuse to recuse[.]" Accordingly, there was no action by the trial court and no alleged error for this court to review. *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky.App. 1985) ("function of the Court of Appeals is to review possible errors made by the trial court, but if the trial court had no opportunity to rule on the question, there is no alleged error for this court to review.") [Footnote omitted.]

▮▮▮ Regardless of whether Matthews should have preserved this issue by first bringing his concerns to the trial judge, we agree with the Commonwealth that there was no basis for the trial judge to recuse from this case. Regarding the judge's position as Commonwealth Attorney at the time of the 1999 conviction, *Carter* specifically addresses such a situation: "[T]he fact that Judge Soyars was County Attorney at the time of the prior convictions in 1973 and 1977 does not affect his qualification to preside at the pleas of guilty herein for the simple reason that those convictions were not 'the matter in controversy' as set out in KRS 26A.015(2)(b)." *Carter*, 701 S.W.2d at 410. Matthews' 1999 conviction is not the matter in controversy, and therefore the trial judge's position at that time is immaterial as a basis for his current recusal. Furthermore, Matthews has failed to show that the trial judge was partial at all. In fact, the Commonwealth points out that the judge suppressed evidence on Matthews' motion and raised the penalty phase issue addressed above, both of which show his impartiality.

▮▮▮ Finally, Matthews argues that the cumulative effect of the errors he argued above deprived him of a fair trial. Because we have found no error in any of the allegations Matthews raised in his brief, we likewise hold that there is no cumula-

tive error. *See McQueen v. Common-wealth,* 721 S.W.2d 694, 701 (Ky.1986) ("In view of the fact that the individual allegations have no merit, they can have no cumulative value.").

For the foregoing reasons, the judgment of the McCracken Circuit Court is affirmed.

ALL CONCUR.