RENDERED: AUGUST 20, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0793-MR

KENTUCKY RETIREMENT SYSTEMS,
BY AND THROUGH THE BOARD OF
TRUSTEES OF KENTUCKY RETIREMENT
SYSTEMS, AND ON BEHALF OF KENTUCKY
EMPLOYEES RETIREMENT SYSTEM                    APPELLANT


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE PHILLIP J. SHEPHERD, JUDGE
                    ACTION NO. 16-CI-01228


WESTERN KENTUCKY
UNIVERSITY                                              APPELLEE



                            OPINION
                            AFFIRMING

                         ** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND MAZE, JUDGES.

CLAYTON, CHIEF JUDGE: Kentucky Retirement Systems, ("Retirement

Systems" or "Systems"), by and through its Board of Trustees and on behalf of

Kentucky Employees Retirement System, appeals from an opinion and order of the

Franklin Circuit Court granting summary judgment to Western Kentucky University ("WKU"). The issue is whether a group of former WKU maintenance workers, who are now employed by a private company that manages WKU's facilities, are still employees of the university for purposes of participating in the Kentucky Employees Retirement System ("KERS"), thus requiring WKU to continue making pension contributions on their behalf. Retirement Systems argues that the circuit court lacked subject matter jurisdiction to address the question under the Declaratory Judgment Act, Kentucky Revised Statutes ("KRS") 418.010 *et seq*., and usurped Retirement Systems' exclusive statutory authority in making this determination. Systems alleges multiple additional errors by the circuit court relating to the scope of its review, discovery issues, statutory violations, and evidentiary issues.

**Background**

WKU is a state university that participates in KERS. KERS is administered by Retirement Systems and is governed by KRS 61.510 *et seq*. Sodexo Management Inc. is a private corporation which provides management, facilities, and food services to over five hundred universities throughout the United States. Sodexo has provided management services in WKU's Department for Facilities Management since 1994.

In March 2015, WKU solicited bids from outside contractors to submit a five-year plan to recruit, hire, train, and retain maintenance workers. Sodexo was the only company that submitted a bid, which the university did not immediately accept. Then, in January 2016, WKU's funding was reduced by executive-branch budget cuts. WKU performed a cost-benefit analysis which showed that accepting Sodexo's offer would help to alleviate the university's budgetary shortfall and improve the performance of the maintenance workers. Accordingly, on April 26, 2016, WKU entered into a Management Agreement pursuant to which Sodexo would recruit, hire, and supervise employees to provide facilities services to the university. The contract included a provision under which Sodexo agreed to offer employment to the outgoing maintenance workers. This provision was included in order to comply with KRS 45A.551(3)(e)2., which provides that when a state agency terminates employees and outsources their work to a private vendor, the agency must ask the vendor to hire the displaced employees and provide them with comparable wages.

WKU thereafter notified the maintenance workers that their employment with WKU would be terminated effective July 31, 2016. The workers were also informed they would be considered for employment with Sodexo if they met certain standards. WKU did not terminate the employment of eighteen custodial and grounds-keeping employees who had more than 20 years of service

-3-

to WKU and it continues to pay KERS contributions for these employees. Ultimately, 148 of the 164 employees who were terminated transitioned to employment with Sodexo.

On May 23, 2016, WKU notified Retirement Systems of the agreement with Sodexo and solicited any concerns. More than two months later, three days before the contract became effective, Retirement Systems sent a letter notifying WKU that the transitioning employees were required to continue their participation in KERS. As grounds, the letter stated that the employees would still be "controlled to a significant degree by WKU" which indicated that "there continues to be an actual employee/employer relationship between the . . . employees and WKU[.]" The letter directed WKU to continue reporting the employees in question to Retirement Systems.

Correspondence and discussions thereafter continued between WKU and Systems but Systems did not alter its position, stating that the employees remained "common law employees" of WKU and that WKU's compliance with KRS Chapter 45A did not alter this outcome. It advised that WKU remained obligated to remit employer and employee contributions for these individuals, and directed WKU to do so in order to avoid future penalty assessments under KRS 61.675(3)(b). It also notified the university that the employees would not be

permitted to retire or take a refund of their KERS accounts while working for Sodexo.

WKU thereafter filed a petition for declaratory judgment against Retirement Systems in the Franklin Circuit Court. It sought a declaration that WKU's privatization of the services encompassed in the contract with Sodexo complied with the law of Kentucky and that Systems could not unilaterally determine that the privatization pursuant to KRS Chapter 45A was void; that the employees transitioned to Sodexo ceased to be WKU employees; that WKU was no longer obligated to remit employer or employee contributions to KERS; that WKU and its former employees were not responsible for any penalties or interest; and that the former employees had a break in service from WKU and could have full access to their KERS retirement benefits. Systems sought to dismiss the petition on multiple grounds. The motion was denied. Ultimately, Systems argued that the circuit court lacked jurisdiction to address the petition because Systems had been given the sole authority by KRS 61.510(5) to determine who is an employee for purposes of participation in the KERS.

Ultimately, the Franklin Circuit Court granted summary judgment to WKU, holding that it had jurisdiction to entertain the petition. It found that Retirement Systems employed the wrong standard in evaluating the status of the transitioned employees. Systems employed the 20 Factors Test of the Internal

Revenue Service ("IRS") in determining that the workers remained employees of WKU. The circuit court held that the definition of "employer" found in KRS 61.510(6) was the controlling standard for making this determination and superseded the 20 Factors Test. It determined that under KRS 61.510(6), WKU was not the employer of the employees because WKU no longer had the power to appoint or select these employees. This appeal by Retirement Systems followed. Further facts will be set forth below as necessary.

**Standard of Review**

"[A]n action for declaratory relief commenced in the circuit court is an original action to be tried *de novo,* in which the circuit judge ascertains the facts without deference to the [lower] court's view." *Whitley v. Robertson County*, 406 S.W.3d 11, 14-15 (Ky. 2013).

Under Kentucky Rules of Civil Procedure (CR) 56.03, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment should be granted when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991).

-6-

On appeal, we consider whether the circuit court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). Furthermore, because factual findings are not at issue, our review is *de novo* and we owe no deference to the conclusions of the trial court. *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006).

Finally, a trial court's rulings on evidentiary issues are reviewed for an abuse of discretion. *Matthews v. Commonwealth*, 371 S.W.3d 743, 749 (Ky. App. 2011) (citations omitted). The test for an abuse of discretion "is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citation omitted).

## Analysis

Retirement Systems argues that the circuit court's decision to address WKU's petition for declaratory judgment usurped the exclusive authority of Retirement Systems to determine who is a qualifying employee. According to Systems, this authority derives from KRS 61.510(5), which states:

> "Employee" means the members, officers, and employees of the General Assembly and every regular full-time, appointed or elective officer or employee of a participating department, including the Department of Military Affairs. The term does not include persons engaged as independent contractors, seasonal, emergency, temporary, interim, and part-time workers. **In case of any doubt, the board shall determine if a**

> **person is an employee within the meaning of KRS 61.510 to 61.705**[.]

(Emphasis added.)

Retirement Systems argues that the last sentence of this provision grants it the exclusive power to make an administrative determination regarding the status of an employee for pension purposes, and that this determination is susceptible only to the most limited form of review. It points out that KRS Chapter 61 authorizes no express means of appealing such a decision, whereas the chapter does provide for appeals by individual members (KRS 61.645(14) and (16)) and by agencies in very specific instances (KRS 61.598(7)). Systems further argues that KRS 13B.140, which provides for the judicial review of the final orders of an agency, is also inapplicable here because WKU never requested such a review. Systems acknowledges that judicial review of a state agency action is available when a party alleges arbitrariness or deprivation of due process, *see, e.g.*, *Crouch v. Jefferson County, Kentucky Police Merit Board*, 773 S.W.2d 461 (Ky. 1988) and *Alvey v. Davis*, 583 S.W.3d 20, 24 (Ky. App. 2019), but contends that it is unavailable here because WKU never made such claims. In sum, Retirement Systems argues that because there is no statutory basis for an appeal and no allegation by WKU of arbitrariness or deprivation of due process, the circuit court lacked subject matter jurisdiction to consider WKU's petition.

The circuit court found that it had jurisdiction under KRS 418.040, which provides that "[i]n any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked." The circuit court noted that it was a court of record having general jurisdiction by operation of KRS 23A.010, that an actual controversy existed between the parties regarding their differing interpretations of the controlling statute, and that WKU could be liable for millions of dollars in retirement contributions if the Systems' interpretation was upheld. It characterized this as precisely the kind of legal dispute over the interpretation of statutes and legal rights that is contemplated by the Declaratory Judgment Act. We agree.

The Declaratory Judgment Act is "remedial; [its] purpose is to make courts more serviceable to the people by way of settling controversies, and affording relief from uncertainty and insecurity with respect to rights, duties and relations, and [is] to be liberally interpreted and administered. KRS 418.080." *Bank One Kentucky NA v. Woodfield Financial Consortium LP*, 957 S.W.2d 276, 278 (Ky. App. 1997) (citations omitted).

WKU's situation is analogous to that of the appellant in *Whitley v. Robertson County*, *supra*, in which the Kentucky Supreme Court ruled that a declaratory judgment action was appropriate. Whitley purchased a property containing a portion of laneway which he assumed was part of the county road system. *Whitley*, 406 S.W.3d at 13. He then petitioned the fiscal court to abandon or formally discontinue the portion of the laneway on his land from the county road system. The fiscal court formally decided against his petition and voted against discontinuance of the roadway. He did not appeal from this decision, although a formal appeals process was available. *Id.* He later discovered that the road had never been properly adopted as part of the county system in the first place. At a regular meeting of the fiscal court, he presented evidence of this finding and asked the fiscal court to acknowledge that there had never been a formal adoption into the official road system. *Id.* The fiscal court refused and reaffirmed that the laneway was part of the county system. *Id.* at 14. Whitley then filed a declaratory judgment action and the circuit court granted summary judgment, finding that the disputed section had not been properly adopted as a county road. The Kentucky Supreme Court affirmed. It noted that Whitley could not have appealed from the fiscal court's decision because it took no formal action of the kind that is appealable under KRS 178.100; rather, it simply "reaffirmed its ongoing stance" that the laneway was a county road. *Id.* at 15-16.

-10-

Similarly, in this case, there was no formal determination on the part of Systems from which WKU could have brought an appeal pursuant to KRS Chapter 13B, which permits judicial review of an administrative final order. As in the case of the fiscal court in *Whitley*, Systems simply reiterated its stance that the transitioned employees are still employees of WKU for pension purposes. Under *Whitley*, therefore, a petition for declaratory judgment was an appropriate means of settling the dispute between the parties.

Systems argues that routine administrative determinations must be distinguished from final administrative decisions for which a KRS Chapter 13B hearing is permitted, claiming that otherwise every decision by an agency would be challenged and bring governmental executive action to a halt.

According to WKU, Systems' decision, which was made without a hearing or any formal adjudication, means the university may have to pay $4 million over the next five years in pension contributions for employees to whom it no longer issues paychecks. This potential result is serious enough to implicate the university's procedural due process rights and concerns of arbitrariness under Section 2 of the Kentucky Constitution. WKU may not have raised these concerns below but they may be considered by this Court in the context of a declaratory judgment action. "The general rule that matters not raised below may not originally be raised in this court does not apply here. In a declaratory judgment

-11-

action, we are not 'confined to errors alleged or apparent in the record.' KRS 418.065." *Rea v. Gallatin County Fiscal Court*, 422 S.W.2d 134, 138 (Ky. 1967). Although "[t]hese specific provisions applicable only in declaratory judgment actions should not be viewed as a judicial safety net, relieving litigants of the need to consider carefully their responsive pleadings, . . . they indisputably allow both trial and appellate courts to reach those issues deemed necessary for proper resolution of a declaratory judgment action." *Bowling v. Kentucky Dep't of Corrections*, 301 S.W.3d 478, 486 (Ky. 2009), *as corrected* (Jan. 4, 2010).

"KRS 418.040 is an expansive statute which permits parties involved in a dispute to resolve conflict in a nearly limitless number of situations. It is therefore fair to say that the provision is a crucial provision implementing our Constitution's mandate that '[a]ll courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.' Ky. Const. § 14[.]" *Whitley*, 406 S.W.3d at 18. Because the petition presented an actual and serious controversy between the parties and because WKU was afforded no other avenue of relief, the circuit court properly asserted jurisdiction over the matter. This is not a unique situation. For example, in order to obtain judicial review in prison discipline cases, inmates are permitted to petition the circuit court for a declaration of rights because adjustment hearings are exempt from the

application of KRS Chapter 13B. *Watkins v. Fannin*, 278 S.W.3d 637, 642 (Ky. App. 2009).

Next, Systems argues that, having assumed jurisdiction, the circuit court should have limited the scope of its review to determining whether Systems possessed the statutory authority to make the employee status determination pursuant to KRS 61.510(5). Systems contends that the circuit court exceeded its authority when it held that Systems erred in applying the IRS 20 Factors Test to determine whether employees are required to participate in KERS. According to Systems, the 20 Factors Test is used by the IRS in determining income and employment tax withholding requirements and allowability of work-related and employee benefit plan income tax deductions. It contends that under the *American Beauty Homes* line of cases, *see American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission*, 379 S.W.2d 450, 453 (Ky. 1964), this holding by the circuit court was an inappropriate *de novo* review of an administrative action.

The circuit court held that Systems should have applied the standard found in KRS 61.510(6), which defines "employer" as "a department or any authority of a department having the power to appoint or select an employee in the department, including the Senate and the House of Representatives, or any other entity, the employees of which are eligible for membership in the system pursuant

to KRS 61.525[.]" Relying on KRS 13A.130, the circuit court described the use of the IRS 20 Factors Test as a "deviation from the appropriate statutory test in a manner that expands or alters the statute through internal policy. An agency cannot modify or alter the policy set forth in statute through internal policy." KRS 13A.130(1) provides that "[a]n administrative body shall not by internal policy, memorandum, or other form of action . . . [m]odify a statute or administrative regulation [or] [e]xpand upon or limit a statute or administrative regulation[.]" The circuit court held that Systems' reliance on the IRS 20 Factors Test was beyond the scope of the controlling statutes and faulted Systems for not even formally incorporating the IRS 20 Factors Test into its administrative regulations. It concluded that because it is undisputed that Sodexo, not WKU, has the power to choose who it employs and the power to fire these employees, under the plain language of KRS 61.510(6), WKU is not the "employer" of the employees.

Systems argues that its use of the IRS 20 Factors Test was appropriate because under KRS 61.645(9)(e), it is required to maintain its qualified tax-exempt status with the IRS. Systems contends that because it is required by statute to comply with federal taxation statutes and regulations, it must guard against "questionable" employment arrangements made by KERS agencies such as WKU. It further points out that the IRS 20 Factors are similar to those used in common law, by the Kentucky Workers' Compensation Board, and by the Wages and Hours

-14-

Division of the Kentucky Department of Labor. It contends that the totality of the circumstances must be considered in determining whether an employer-employee relationship exists, including factors such as WKU's control over the employees, the provision of tools, instrumentalities, and the place of work. It contends that this approach does not violate Kentucky law but rather complies with the deference to federal statutes and regulations required by KRS 61.645(9).

Although we recognize that Systems is required to comply with IRS statutes and regulations, its decision not to acknowledge the clear definition of "employer" provided in KRS 61.510(6) was erroneous. The circuit court's holding that Systems applied the wrong legal standard was well within the permissible scope of its *de novo* review and did not intrude on Systems' administrative authority. In any event, the circuit court also found that, even under the IRS 20 Factors Test, the employees at issue were employees of Sodexo and not WKU.

Systems further argues that the grant of summary judgment was inappropriate because material issues of fact remain unresolved. It contends that an analysis of the situation involves a fact-specific review which conflicts with the summary judgment standard. It further contends that, even if the facts are undisputed, summary judgment is inappropriate if there is a dispute as to the conclusions to be drawn. The case upon which it relies for this proposition, *Commonwealth v. Thomas Heavy Hauling, Inc.*, 889 S.W.2d 807, 808 (Ky. 1994),

is not directly relevant, however, because it involved differing interpretations of undisputed facts by two experts. "[T]he expert witness utilized by each of the parties formed a different intent and conclusions from the undisputed facts of the record, which rendered summary judgment inappropriate." *Id*. But Systems can point to no facts which would support a finding that WKU retained the power "to appoint or select an employee in the [maintenance] department[.]" KRS 61.510(6). In light of the absence of this key point of evidence, summary judgment was appropriate.

Systems further argues that the circuit court's entry of a protective order limiting discovery improperly limited its review process. After WKU filed its complaint, Systems responded by filing a motion to dismiss. The circuit court denied the motion and Systems served interrogatories on WKU. WKU sought a protective order to excuse it from having to respond. The circuit court expressed concern that protracted discovery would hinder an expeditious resolution of the case, but it allowed the parties to request documents and have a representative at a CR 30.02(6) deposition. Later, the court permitted additional discovery but only insofar as WKU was allowed to explore the Systems' approval of a similar privatization effort at Eastern Kentucky University ("EKU"), where a number of employees were transitioned to employment by Aramark.

-16-

Systems argues that it was limited in the number of depositions it was allowed to take, and no verbal testimony was permitted from the transitioned employees and their supervisors. It argues that the circuit court abused its discretion in prohibiting the interrogatories, limiting the number of depositions, and then sustaining WKU's request to explore the situation at EKU.

We acknowledge that it is difficult for Systems to demonstrate actual prejudice stemming from the circuit court's ruling because the additional facts that might have been revealed through expanded discovery are unknown. But Systems does not suggest the type of evidence it sought to discover and what its determinative impact on the case could have been. By contrast, WKU's efforts to explore Systems' approval of an employee privatization effort at EKU was directly pertinent to this case. The circuit court tried to balance its concerns for a timely resolution of the case with its recognition that the analogous situation at EKU was germane to the resolution of this legal question. As WKU has pointed out, the ability to consider the EKU contract enabled the circuit court to arrive at a uniform and fair resolution of a novel issue. Under these circumstances, the protective order and the decision to allow discovery regarding the privatization arrangement at EKU was not an abuse of discretion on the circuit court's part.

Systems next argues that the circuit court erred in failing to rule on whether the transition of the WKU employees violated various provisions of KRS

Chapter 45A, the Model Procurement Code, and in not allowing Systems to file an amended answer and counterclaim raising challenges based on these purported violations. Specifically, it contends that the circuit court erred in failing to rule that the transition of the WKU employees to Sodexo violated KRS 45A.551, which governs the procedures for state agency privatization contracts. Systems alleges that WKU failed to obtain approval from the Finance and Administration Cabinet for the privatization as required by the statute, and thereby voided its contract with Sodexo. It further alleges violations by WKU of KRS 45A.130, which governs cost reimbursement contracts.

In its order of May 21, 2020, which denied Systems' motion to alter, amend, or vacate its opinion and order granting summary judgment, the circuit court addressed these arguments. As to the cost reimbursement contract provision, the circuit court found that KRS 45A.130 was inapplicable because the agreement between WKU and Sodexo did not provide "for the reimbursement of the contractor's cost plus a fixed fee," but rather provides that WKU is to repay Sodexo for these costs as they increase. Thus, WKU is not restricted in its ability to contest and negotiate any requested increase in costs.

The circuit court further ruled in regard to KRS 45A.551 that because universities have close to plenary power over the operation of their institutions, it is unclear whether the secretary of the Finance and Administration Cabinet had any

-18-

legal authority over the contract with Sodexo. The court further observed that "even if there was a violation of KRS Chapter 45A, it would not alter the Court's determination that the employees in question ceased being employees of WKU and became employees of Sodexo for purposes of determining WKU's obligation to make [KERS] contributions."

We agree with the circuit court's interpretation of these statutory provisions and their application to the agreement between WKU and Sodexo. Ultimately, the issue in this case was not whether the agreement between WKU and Sodexo complied with KRS Chapter 45A, but whether the employees in question remained employees of WKU for purposes of contributing to KERS.

Systems argues that WKU's actions also violated KRS 61.520 and KRS 61.522, which require participating departments to collect and remit KERS contributions for their employees. It contends that WKU's scheme thwarted legislative policy objectives by attempting to evade its financial responsibility for the unfunded actuarial pension liability of the transitioned employees. But nothing in these statutes prevents agencies from terminating employees and KRS 61.520(4) states that a department only needs to make contributions for positions until those positions no longer exist. WKU's decision did not hinder any clearly-stated legislative goals and Systems' argument in this regard is speculative.

Furthermore, WKU's actions were well within the authority granted to it by the Legislature. As the circuit court observed, the Kentucky Supreme Court has emphasized that the financial management and control of our state universities is enshrined in their boards of regents. *Commonwealth ex rel. Beshear v. Commonwealth Office of the Governor ex rel. Bevin*, 498 S.W.3d 355 (Ky. 2016). The circuit court recognized that the Board of Regents of WKU, faced with a reduction in its appropriations, made the difficult decision to outsource its physical plant operations to Sodexo, and concluded as follows: "So long as that outsourcing vests the basic employment decisions of management, hiring and firing in the private entity, and the private contractor rather than WKU meets the definition of employer in KRS 61.510(6), the [Systems] has no legal authority to second-guess this financial management decision of the WKU Board."

Finally, Systems argues that the circuit court should not have compared the WKU agreement with a separate outsourcing contract between EKU and Aramark. In that case, Systems determined that EKU's contract with Aramark did not violate KRS Chapter 61. The circuit court believed that examining the EKU contract would provide guidance regarding Systems' internal review and application of the issues. Systems argues that the circuit court erred in comparing the two agreements because they contained material differences and characterizes comparing the two agreements as akin to an appellate court randomly selecting an

unrelated decision of a circuit court and comparing it to the matter being considered on appeal.

But the EKU agreement was not unrelated to the matter at hand: the factual situations were highly similar. The circuit court carefully analyzed the similarities and the differences between the two agreements and concluded that the parallels between them made it difficult to understand why WKU was required to continue making contributions to KERS while EKU was not. In this way, the comparison of the two agreements highlighted the potential arbitrariness which characterized Systems' decision-making regarding WKU. The EKU agreement was pertinent evidence in this case and the circuit court did not abuse its discretion in considering it.

**Conclusion**

For the foregoing reasons, we affirm the opinion and order of the Franklin Circuit Court granting summary judgment to WKU.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Robert W. Kellerman
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Thomas N. Kerrick
Laura M. Hagan
R. Alexander Thomason
Bowling Green, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Thomas N. Kerrick
Bowling Green, Kentucky