# IMPORTANT NOTICE

## "NOT TO BE PUBLISHED OPINION"

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED" PURSUANT TO RULE OF APPELLATE PROCEDURE (RAP) 40(D). THIS OPINION SHALL NOT BE CITED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

UNDER RAP 41, UNPUBLISHED OPINIONS OF KENTUCKY APPELLATE COURTS RENDERED AFTER JANUARY 1, 2003, THAT ARE FINAL UNDER RAP 40(G), MAY BE CITED BY A PARTY FOR CONSIDERATION BY A COURT IF THERE IS NO PUBLISHED OPINION THAT ADEQUATELY ADDRESSES THE POINT OF LAW BEING ARGUED BY A PARTY.

IF AN UNPUBLISHED OPINION IS CITED FOR CONSIDERATION BY A COURT THE OPINION SHALL BE SET OUT AS AN UNPUBLISHED OPINION IN THE DOCUMENT IN WHICH THE UNPUBLISHED OPINION IS CITED.

RENDERED: APRIL 23, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0361-MR

BRANDON OAKLEY                                                         APPELLANT


                    ON APPEAL FROM WHITLEY CIRCUIT COURT
V.                       HONORABLE DANIEL BALLOU, JUDGE
                                  NO. 23-CR-00320


COMMONWEALTH OF KENTUCKY                                       APPELLEE


**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Brandon Oakley appeals as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution from his conviction and twenty-year prison sentence after a jury trial in the Whitley Circuit Court. He argues that the trial court erred in failing to grant his motion for directed verdicts on various assault and terroristic threatening charges. We affirm that it was appropriate to allow the jury to resolve factual disputes in deciding whether to believe the evidence for the Commonwealth over the evidence supporting Oakley's position.

## I. FACTUAL BACKGROUND

Oakley enjoyed his birthday by drinking heavily and using a THC vape. This led to an argument with his girlfriend outside a local gas station, and the police were called. Officer Steven Hill responded to the domestic disturbance

around 6:30 PM on September 16, 2023. Oakley's girlfriend stated that there was a verbal argument. Hill did not observe any argument when he arrived. Hill could smell alcohol on Oakley. Oakley and his girlfriend gave Hill their identification. Hill told Oakley he was not going to arrest him as long as Oakley did not present a danger, had no warrants or detainers, and did not do "something stupid." Oakley said his father was coming.

While Hill waited on dispatch, Oakley's behavior deteriorated. He slurred his speech and forgot prior conversations. He stumbled around, wandering close to the road and almost walked into a horse trailer pulling into the parking lot. Hill tried to redirect Oakley out of the way. Oakley jerked his arm free from Hill and backed away, balling his fist and ignoring commands to put down his backpack. Hill drew his taser and eventually handcuffed Oakley for alcohol intoxication.

Oakley's lack of cooperation escalated. Oakley went limp and fell to the ground while Hill was taking him to the cruiser. Oakley kicked at Hill. Oakley's girlfriend tried to calm him down, but he continued resisting. Oakley was yelling obscenities like "F*** your momma!", and "I'm gonna kill you!", and "I'm gonna shoot you, too, b****!"

An off-duty jailer, Conner Pennington, observed what was happening and tried to help. Officer Hill tried to get Oakley in the cruiser, but Oakley braced his foot against the cruiser door to prevent it from closing. Oakley kicked Hill in

the nose and spat on him. Oakley also kicked Pennington in the chest and chin and spat on him.

Officer Dorman Patrick arrived on the scene to help. As Patrick tried to secure Oakley's legs, Oakley kicked Patrick in the groin, knocking off his body camera, and spat on him. Officer Patrick repeatedly hit Oakley to subdue him and gain his compliance. This resulted in a fracture to Patrick's pinky finger which required surgery and insertion of a plate to repair it. The Commonwealth played the body camera footage from Officers Hill and Patrick which recorded Oakley's behavior and statements.

Oakley testified at trial. He admitted drinking heavily for his birthday, consuming four cans of Four Loko which have an alcohol content of 12-13%, and using a THC vape. Oakley claimed that he blacked out before the events happened and could not remember anything until he woke up in jail.

Oakley moved for a directed verdict at the close of the Commonwealth's case. He renewed the motion at the close of the defense case. The trial court overruled these motions. The court gave a voluntary intoxication instruction to the jury.

The jury found Oakley guilty of four counts third degree assault for kicking and spitting on Officers Hill and Patrick, one count of fourth-degree assault for kicking Pennington, three counts of terroristic threatening, one count of resisting arrest, and for being a first-degree persistent felony offender

(PFO 1).[1] The jury recommended a twenty-year sentence. The trial court entered a final judgment following the jury's recommendation. Oakley appeals to this Court as a matter of right.

## II. ARGUMENT

Oakley argues the trial court erred in denying his motions for a directed verdict. The standard for challenging the sufficiency of the evidence requires a trial court to view all reasonable inferences from the evidence in favor of the non-moving party; it may grant a directed verdict only when the evidence cannot support a conviction. *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983). A directed verdict is improper if the evidence would allow a reasonable juror to find the defendant guilty beyond a reasonable doubt. In deciding the motion, a trial court must accept the Commonwealth's evidence as true, leaving issues of credibility and the weight of the testimony for the jury. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). On appeal, the question is whether, considering all the evidence, it would be clearly unreasonable for the jury to find the defendant guilty. Only in that circumstance is the defendant entitled to a directed verdict of acquittal. *Id.*

### A. The evidence supported convictions for third-degree assault.

A person is guilty of third-degree assault when that person intentionally causes or attempts to cause physical injury to a peace officer. Kentucky

---

[1] Prior to trial, the Commonwealth dismissed one count of third-degree assault, the third-degree escape charge, and the second-degree fleeing/evading charge.

4

Revised Statutes (KRS) 508.025(1)(a)(1). Oakley argues his voluntary intoxication negated the intent element on all four charges. The Commonwealth asserts there was ample evidence for the jury to find intent, which it can infer, to support a conviction.

Voluntary intoxication is a question of fact for the jury to decide. It is a defense only when a person is so intoxicated that it negates that person's ability to form the intent to commit a crime. *King v. Commonwealth*, 513 S.W.3d 919, 923 (Ky. 2017) (citing KRS 501.080(1)). "'An accused is always entitled to have this defense submitted to the jury if his evidence is sufficient to indicate the degree of intoxication required . . . to prevent his forming an intent to commit' the crime charged." *King*, 513 S.W.3d at 923 (quoting *Parido v. Commonwealth*, 547 S.W.2d 125, 128 (Ky. 1977)). Evidence of intent need not be direct. "Intent can be inferred from the actions of an accused and the surrounding circumstances. The jury has wide latitude in inferring intent from the evidence." *Anastasi v. Commonwealth*, 754 S.W.2d 860, 862 (Ky. 1988).

Both Officers Hill and Patrick testified and detailed their encounters with Oakley. The Commonwealth played the videos from their body cameras. This evidence showed Oakley participating in coherent conversations with Officer Hill and his girlfriend. Oakley repeatedly expressed his desire not to go to jail. The jury could conclude Oakley purposefully went limp and fell to the ground to make it harder for Hill to take Oakley to the cruiser and that Oakley

5

purposefully stuck his foot between the door and the cruiser to keep the door open.

This record provides substantial evidence for a jury to reject Oakley's intoxication defense and find he acted with the required intent. When there is proof to support a defense of voluntary intoxication, it is the jury's prerogative to consider the evidence and decide whether to accept or reject it. *King*, 513 S.W.3d at 925. "The evidence of his intoxication was not so compelling as to completely negate the issue of intent," so it was not unreasonable for a jury to find Oakley guilty of third-degree assault. *Carver v. Commonwealth*, 303 S.W.3d 110, 119 (Ky. 2010).

Oakley specifically argues that Officer Patrick's broken finger resulted from Officer Patrick striking Oakley in anger rather than from Oakley's own conduct. The record permitted the jury to infer that Oakley's resistance and repeated kicking precipitated Officer Patrick's use of force and contributed to the injury, and that Oakley attempted to cause physical injury by kicking and resisting even if the precise moment of fracture occurred while Officer Patrick was hitting Oakley. Under *Benham*, the question is not whether a different inference was possible, but whether it was clearly unreasonable for the jury to find the element satisfied. Here, it was not.

### B. The evidence supported convictions for fourth-degree assault.

A person is guilty of fourth-degree assault when he intentionally causes physical injury to another person. KRS 508.030. Physical injury means

6

"substantial physical pain or any impairment of physical condition." KRS 500.080(17). Oakley argues this standard was not satisfied where Pennington testified he suffered short-term pain and declined medical attention. The Commonwealth argues that Pennington's testimony that he was kicked in the face and chest and suffered pain satisfies this element and that the statute contains no duration requirement for how long the physical pain must last.

Pennington testified under oath that Oakley kicked his chest and chin and that it caused him pain. This meets the standard for physical injury under the misdemeanor assault statute. The jury was entitled to believe Pennington's testimony. The statutes and case law do not require a length of duration that a victim must suffer. Certainly, a defendant can argue that physical contact was so inconsequential that the touching did not cause pain. This was a question for the jury to decide.

### C. The evidence supported convictions for third-degree terroristic threatening.

A person commits terroristic threatening in the third degree when that person "threatens to commit any crime likely to result in death or serious physical injury to another person." KRS 508.080(1)(a). Oakley raises two sufficiency challenges: (1) his intoxication negated the intent element; and (2) the Commonwealth failed to prove at whom the threats were directed. The statute does not require that the accused intend to carry out the threat or that the victim hear the threat. The body camara footage clearly recorded Oakley making threats while struggling with Hill and Patrick.

7

The jury could reasonably find that Oakley, despite his intoxication, understood what was happening and acted intentionally. The body camera videos from Officers Hill and Patrick recorded Oakley angrily yelling many derogatory and violent statements as they were trying to arrest and subdue him. These statements included "I'm gonna kill you!" and "I'm gonna shoot you, too!" Yelling things like this while kicking, spitting, and struggling with others creates a question of fact for the jury to decide.

Terroristic threatening in the third degree can be committed even if the victim has no knowledge of the threat. *Brock v. Commonwealth*, 947 S.W.2d 24, 31 (Ky. 1997) (citing the commentary). The commentary to KRS 508.080 differentiates terroristic threatening from menacing which requires the victim be placed in reasonable apprehension of immediate injury. KRS 508.050.

Oakley relies on *Counterman v. Colorado*, 600 U.S. 66 (2023). *Counterman* held that the First Amendment requires the prosecution to prove that a defendant had some subjective understanding of the threatening nature of his statements, and that recklessness—consciously disregarding a substantial risk that the statements would be viewed as threatening—is a constitutionally sufficient mental state. *Id.* at 74.

*Counterman* involved a prosecution for ambiguous statements under an amorphous statute. The Colorado statute prohibited repeated communications "in a manner that would cause a reasonable person to suffer serious emotional distress." *Id.* at 70 (citing Colo. Rev. Stat. § 18–3–602(1)(c) (2022)). *Counterman*

involved repeated, often ambiguous online communications to a civilian under a stalking statute keyed to causing emotional distress. The Facebook messages sent to a stranger in *Counterman* included "good morning sweetheart," "was that you in the white Jeep," and "staying in cyber life is going to kill you." *Id.* at 70.

Oakley's case differs substantially from *Counterman*. It involved face-to-face, explicit threats to kill or seriously injure police officers during an active physical resistance to arrest. The specificity of Oakley's threats made in this context distinguishes his case from *Counterman*. Additionally, the trial court instructed the jury on intent and voluntary intoxication. The jury rejected Oakley's defense, concluding he acted intentionally, and convicted him.

### III. CONCLUSION

The Commonwealth introduced sufficient evidence to overcome the low threshold for surviving a motion for directed verdict. Oakley testified in his defense raising the affirmative defense of voluntary intoxication. The trial court properly submitted questions of fact to the jury. We affirm Oakley's conviction and sentence.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Roy A. Durham
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General